[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendants, Connecticut Lottery Corporation ("CLC"), Karen Mehigan and Alfred W. Dupuis, have moved to strike the Fourth, Fifth, Sixth, Seventh, Tenth, and Eleventh Counts of the plaintiffs' Revised Complaint dated October 17, 2000 ("Complaint"), based upon the failure of said counts to state claims upon which relief may be granted.
Facts
The Complaint alleges that on March 6, 1998, at approximately 8:30 a.m., Matthew Beck killed the plaintiffs' decedent, Michael T. Logan, and three other individuals at the headquarters of the Connecticut Lottery Corporation located at 85 Alumni Road, Newington, Connecticut. It further alleges that the plaintiff, Margaret P. Logan, was married to Michael T. Logan and is the administratrix of his estate, that Karen Mehigan was the Director of Human Resources for CLC responsible for personnel matters involving Matthew Beck, and that Alfred W. Dupuis was the Director of Security for CLC.
The Complaint also alleges that Matthew Beck was on leave from work for stress related to his dissatisfaction with work, anger at his superiors and his explosive personality. The Sixth Count alleges that Karen Mehigan CT Page 11212 was negligent in hiring, screening and/or retaining Matthew Beck in various ways including that "she permitted Matthew Beck to re-enter the workplace at a time when she knew or reasonably should have known that this placed a class of victims, including the Plaintiff's decedent, Michael T. Logan, at an unreasonable risk of serious harm." ¶ 34. That Count also alleges that Karen Mehigan engaged in misconduct which made the injuries and losses suffered by the plaintiffs substantially certain, including that she permitted Beck to reenter the workplace as alleged above. The Seventh Count contains the same allegations of negligence and misconduct with respect to Alfred W. Dupuis.
The Tenth and Eleventh Counts allege loss of consortium based on the allegations of the Sixth and Seventh Counts.
The Fifth Count alleges a claim for bystander emotional distress against CLC. This Count claims that the defendant "should have realized that its conduct involved an unreasonable risk of causing emotional harm to the plaintiff Margaret P. Logan, and that such distress, if it were caused, might result in illness or bodily injury." ¶ 62. They further allege that:
 63. The attack at the lottery shooting, which occurred approximately between 8:30 a.m. and 8:44 a.m., received extensive and prompt coverage in the local media. . . . [T]he plaintiff, Margaret P. Logan, began to observe news reports regarding this incident shortly before 9:00 a.m., approximately, and in the course of the morning, before receiving notification of the death of Michael Logan from the state police, she observed extensive televised news coverage from the scene at the lottery headquarters, knowing that her husband had likely been a victim of Matthew Beck thereby causing her great mental distress.
Discussion of Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly CT Page 11213 limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. Dennison v. Klotz,12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986).
Section 1983 Claims
The Sixth and Seventh Counts purport to state claims for relief pursuant to 42 U.S.C. § 1983, and are directed solely against Karen Mehigan and Alfred W. Dupuis, respectively. The defendants move to strike these counts on several grounds, including the failure to allege a basis of duty under federal law.
The plaintiffs allege that Mehigan and Dupuis were agents, employees, or contractors of the Connecticut Lottery Corporation, "which is an agency of the State of Connecticut." (Counts Six and Seven ¶ 33) The plaintiffs also allege that the decedent worked at the Connecticut Lottery. (¶ 3)
The plaintiffs allege that these defendants "owed a duty under the4th, 5th, 8th and 14th Amendments to the United States Constitution . . . to avoid acting with deliberate indifference towards [the decedent's] safety and/or to avoid creation of a condition of danger at the CLC as it related to his safety." As to Karen Mehigan, the plaintiffs allege:
 The Defendant, Karen Mehigan, by acting to promote the placing of Matthew Beck back into the workplace when she knew or reasonably should have known that, he presented an immediate risk of danger to the Plaintiff's decedent, and when no warnings were provided and no security measures were in place, thereby was a substantial factor in creating a danger to the Plaintiff's decedent.
(Sixth Count, ¶ 36)
As to Alfred W. Dupuis, the plaintiffs allege:
 The Defendant, Alfred W. Dupuis, by permitting the return of Matthew Beck to the workplace without taking any preventative security action, and by allowing grossly inadequate security procedures to exist, despite the fact that he knew that Matthew Beck posed CT Page 11214 an immediate threat of serious harm to the Plaintiff's decedent, was also a substantial factor in the creation of the danger to the Plaintiff's decedent.
(Seventh Count, ¶ 35)
1. Fourth Amendment
The Fourth Amendment to the United States Constitution "prohibits unreasonable seizures; it is not a general prohibition of all conduct that may be deemed unreasonable, unjustified or outrageous. See, Carterv. Buscher, 973 F.3d 1328, 1332 (7th Cir. 1992)." Medeiros v.O'Connell, 150 F.3d 164, 167 (2d Cir. 1998). Since the Fourth Amendment covers only "searches and seizures," it is clear that it does not apply as a matter of law in this case to the conduct of the individual defendants.
2. Fifth Amendment
The Fifth Amendment pertains to the requirement of an indictment in federal prosecutions, the prohibition of double jeopardy, the privilege against self-incrimination, and deprivation of private property without just compensation. None of these provisions are applicable to the present case. While the Fifth Amendment also contains a "due process" provision, it is the Fourteenth Amendment's due process clause, not theFifth
Amendment due process clause which applies to alleged state actors. "TheFifth Amendment due process clause applies to and restricts only the federal government. Public Utilities Comm'n v. Pollack, 343 U.S. 451, 461
(1952)." Foito v. Hawkes, 1998 WL 136166 (D.Conn. Burns, J.).
3. Eighth Amendment
"The Eighth Amendment only applies to convicted persons." Soltis v.Kotenski, 63 F. Sup.2d 187, 189 (D.Conn. 1999); Ingraham v. Wright,430 U.S. 651 (1977).
In their Memorandum of Law in Opposition to Defendants' Motion to Strike, the plaintiffs have not presented any case law or argument in support of the defendants' claimed duties under the Fourth, Fifth orEighth Amendments, nor under the procedural due process aspect or the equal protection clause of the Fourteenth Amendment. It appears that the plaintiffs' sole claim with respect to constitutional duties allegedly owed by the defendants to the plaintiffs' decedent is that the defendants' conduct violated Michael T. Logan's "substantive" due process rights under the Fourteenth Amendment to the United States Constitution. CT Page 11215
4. Fourteenth Amendment
"As a general matter, the [Supreme] Court has always been reluctant to expand the concept of substantive due process, because guideposts for responsible decision making in this uncharted area are scarce and open-ended." Collins v. Harker Heights, 503 U.S. 115, 125 (1992). The doctrine of judicial self-restraint requires courts to exercise the utmost care whenever they are asked to break new ground in the field of substantive due process. Id.
In Collins, the plaintiff's decedent was a Sanitation Department employee who died as a result of asphyxia after descending a manhole to unstop a sewer line. The plaintiff commenced a § 1983 action against the decedent's employer, the City of Harker Heights. Her § 1983 claim was predicated solely on the allegation that substantive due process was violated by the failure of the employer-city to provide a safe work environment for the decedent. The Supreme Court summarized the plaintiff's allegations as follows:
 [The plaintiff] brought this action alleging that [the decedent] had a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the City of Harker Heights' custom and policy of deliberate indifference towards the safety of its employees. [The] complaint alleged that the city violated that right by following a custom and policy of not training its employees about the dangers of working in sewer lines and manholes, not providing safety equipment at job sites, and not providing safety warnings. The complaint also alleged that a prior incident had given the city notice of the risks of entering the sewer lines, and that the city had systematically and intentionally failed to provide the equipment and training required by a Texas statute.
Id. at 117-8 (internal citations and quotation marks omitted).
The Supreme Court held that "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." Id. at 126
 The Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression CT Page 11216 . . . The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty or property without due process of law, but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. . . .
 Petitioner's submission that the city violated a federal constitutional obligation to provide its employees with certain minimal levels of safety and security is unprecedented.
Id. at 126-27 (citations, internal brackets and quotation marks omitted; emphasis added).
The Court specifically distinguished cases involving state confinement of pretrial detainees, involuntary commitment in mental institutions, convicted felons, and persons under arrest. In those circumstances, the Court noted that the Eighth Amendment required a minimal level of safety be provided by the state which was depriving the detainees of their liberty. In distinguishing those cases, the Supreme Court stated that the plaintiff "cannot maintain, however, that the city deprived [the decedent] of his liberty when it made, and he voluntarily accepted, an offer of employment." Id. at 128.
In affirming the District Court's dismissal of the plaintiff's complaint for its failure to state a claim upon which relief could be granted, the Court also noted that "the Due Process Clause `does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.'" Id. at 128 (citations omitted). The Court's reasoning was based, in part, on considerations specific to the employer-employee relationship:
 Decisions concerning the allocation of resources to individual programs, such as sewer maintenance, and two particular aspects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country. The Due Process Clause `is not a guarantee against incorrect or ill-advised personnel CT Page 11217 decisions.' Bishop v. Wood, 426 U.S. at 350.
Id. at 128-29.
Other courts have also long recognized that the federal Constitution does not create a duty to provide a safe work environment to public employees.
 42 U.S.C. § 1983 provides an individual with a cause of action where a person under color of law causes another to be deprived of rights secured by the federal Constitution or the laws of the United States. However, there is no federal, constitutional right to a safe place to work.
Cope v. State, 108 Idaho 416, 417 (1985).
The case of Walker v. Rowe, 791 F.2d 507 (7th Cir. 1986), involved a claim by the estates of three deceased prison guards against the Department of Corrections and an assistant warden. The case arose out of the killing of three guards by inmates as they were being returned to their cells after an exercise period. The allegations against the assistant warden included: that the prison had dead spots hidden from guard towers; that there were too few guards; that the prison was overcrowded; that some of the inmates had formed gangs and had taken charge of the prison; that the phone system was defective; that the cells were old and defective; that the guards had not received enough training in controlling riots; that metal detectors were non-operational; that the prisoners were known to make weapons in the metal shop but were not searched; that the prison was not locked down although it was known to be "tense;" and, that there was a failure to timely respond to the riot. In reviewing these claims, the Seventh Circuit Court of Appeals stated that it was assuming that these acts and omissions "increased the risk ofinjury facing the guards." (Emphasis added). Despite this assumption, the Court held that there were no Constitutional violations giving rise to liability under § 1983.
 The defendants did not kill or injure the guards; prisoners did, and this makes all the difference. To see why, consider the language of the due process clause of the fourteenth amendment, on which the guards rely: "Nor shall any State deprive any person of life, liberty or property, without due process of law . . ." The constitution requires the state to grant "process" before it deprives people of life, liberty or property. It is a constraint on the state's CT Page 11218 power to act, a prohibition on the misuse of official power. It does not require the state to guarantee life, liberty or property against invasion by private actors; it requires only that the state not act, unless with due process, when life, liberty or property are in the balance.
Id. at 509 (citations omitted; emphasis added).
The Court concluded by noting that "the constitution no more assures a safe job than it does a job with a generous salary" and that "[t]heconstitution does not assure employees of the government better terms orworking conditions or amenities than those available in privateemployment". Id at 510 (emphasis added). The Court held, therefore, that jury verdicts in favor of the plaintiffs required reversal.
The United States Constitution "deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." County ofSacramento v. Lewis, 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043
(1998). The Supreme Court has, accordingly, "rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and [holds] that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process". Id. at 848-49 (citations omitted).
Here, in the Sixth Count, the plaintiffs allege that Karen Mehigan "knew or reasonably should have known" that her actions put the plaintiffs' decedent at an unreasonable risk of serious harm. In Paragraph 36 the plaintiffs allege that Karen Mehigan "knew or reasonably should have known" that her actions put the plaintiffs' decedent at risk. These allegations expressly sound in negligence. In Paragraph 35 the plaintiffs allege that Mehigan owed a duty to plaintiffs' decedent to avoid acting with deliberate indifference toward his safety, but there is no allegation that the defendant in fact acted with deliberate indifference. In Kostiuk v. Queally, 159 Conn. 91, 94, 267 A.2d 452
(1970), the Supreme Court specifically ruled that the mere use of the word "recklessness" does not transform a claim otherwise sounding in negligence. There is a wide difference between causes of action sounding in negligence and recklessness. Dumond v. Denehy, 145 Conn. 88, 91,139 A.2d 58 (1958). "Recklessness is a state of consciousness with reference to the consequences of one's acts . . . It is more than negligence, more than gross negligence." Dubay v. Irish, 207 Conn. 518,532, 542 A.2d 711 (1988). "It requires a conscious choice of a course of CT Page 11219 action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." Sheimon v. Lafayette Bank Trust Co., 4 Conn. App. 39,45, 492 A.2d 219 (1985) (citations omitted).
In Count Seven, paragraphs 1 through 17 are the preliminary paragraphs. Paragraph 20 expressly sounds in negligence. While it is alleged in paragraph 34 of Count Seven that the defendant had a duty to avoid acting with deliberate indifference, there is no allegation in Count Seven that the defendant in fact acted with deliberate indifference. Moreover, the defendants' alleged deliberate indifference to the safety of the plaintiffs' decedent based on the fact that they knew or should have known that Beck could be dangerous does not rise to the level of conduct that is arbitrary and shocks the conscience. Only that type of conduct can form the basis a claim for violation of substantive due process. See infra.
In opposing the Motion to Strike, the plaintiffs principally rely upon the lower federal court decisions purportedly expounding upon implied exceptions contained in a prior United States Supreme Court decision,DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189
(1989). DeShaney held that a state agency and its social workers did not violate the Due Process Clause by ordering that a 4 year old be returned to his father's custody, after the child had been taken into temporary protective custody based upon reports of child abuse by the father, and multiple bruises and abrasions resulting in a hospitalization. After the child was ordered returned to the father, the 4 year old child was beaten so severely that he fell into a life threatening coma and sustained permanent traumatic brain injury, resulting in profound retardation.
The plaintiffs recognize that the DeShaney case established the general rule that there is no constitutional right to sue state employees who fail to protect against harm inflicted by third persons. However, they argue that lower court decisions have created two exceptions to this rule: (1) the special relationship exception and (2) the increase in vulnerability exception, also reportedly known as the "state-created danger" exception.
With regard to the alleged "special relationship exception," the plaintiff's claim that "courts have found that a state actor's creation of the danger in an employment setting creates a `quasicustodial' relationship with the plaintiff thereby establishing a duty to protect from that very danger introduced by the state actor/employer." The plaintiffs cite Cornelius v. Highland Lake, 880 F.2d 348 (11th Cir. CT Page 11220 1989) to support this proposition. The Eleventh Circuit Court of Appeals, however, has expressly stated that the Cornelius decision has been overruled by the United States Supreme Court's decision in Collins. "Collins directly conflicts with and overrules the part of Cornelius
holding that a government employment relationship, in and of itself, is a `special relationship' giving rise to a constitutional duty to protect individuals from harm by third parties." White v. Lemacks, 183 F.3d 1253,1257-58 (11th Cir. 1999).
Cornelius involved allegations of the state placing prison inmates into the plaintiff's work environment. The plaintiff was subsequently held hostage and threatened with sexual assault by some of the prisoners.
The subsequent Eleventh Circuit case of White v. Lemacks involved similar factual allegations. The plaintiffs were nurses working in a jail infirmary. They alleged that they were required to be in close contact with inmates and that their freedom of movement and ability to flee and protect themselves were limited. They further alleged that they had received assurances from their employer that adequate security measures would be in place to protect them from injury and that, in fact, inadequate steps were taken to protect them. The plaintiffs were attacked and brutally beaten by an inmate who was being held on aggravated assault charges.
In White, the Court stated that the allegations in both the Cornelius
and White cases did not rise to the level of a due process violation under Collins, which recognized a substantive due process violation only where the defendant's conduct was "arbitrary, or conscience shocking, in a constitutional sense." 183 F.3d at 1257. While recognizing that this standard was somewhat amorphous, the White court noted that the Collins
opinion provided guidance for its application:
 The opinion reminds us, for example, that the Supreme Court has been "reluctant to expand the concept of substantive due process," and that judicial self-restraint requires courts to exercise the utmost care in this area. More specifically, we are told in the Collins opinion that when governmental action or inaction reflects policy decisions about resource allocation (as is often the case), those decisions are better made "by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." In other words, when someone not in custody is harmed because too few resources were devoted to their safety and protection, that harm will seldom, if ever, be CT Page 11221 cognizable under the Due Process Clause. Finally, we have the reasoning and holding in Collins that the city's breach of its duty to provide a safe work environment is not arbitrary or conscience shocking in a constitutional sense, but instead is "analogous to a fairly typical statelaw tort claim."
 In determining whether the conduct alleged in Cornelius or in this case was "arbitrary or conscience shocking" under Collins, it is important to note that the plaintiffs in Collins, Cornelius, and this case did not allege that the defendants had intended to harm them or their relatives. They alleged that the defendants had been, at most, deliberately indifferent to their safety. Although [County of Sacramento v.] Lewis [523 U.S. 833, ___, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)] leaves open the possibility that deliberate indifference on the part of government officials or employees will "shock the conscience" in some circumstances, it is clear after Collins that such indifference in the context of routine decisions about employee or workplace safety cannot carry a plaintiff's case across that high threshold.
183 F.3d at 1258 (Internal citations omitted).
Thus, it is clear that Cornelius has been overruled and that in the wake of Collins the socalled "special relationship" exception has no application in the employer-employee context.
There is no United States Supreme Court or applicable Second Circuit Court of Appeals authority cited by the plaintiffs in support of the so-called "state-created danger" exception. All but one of the cases cited by the plaintiffs with regard to the alleged state-created danger exception have either been reversed, overruled, or do not pertain to the employer-employee context.
The plaintiffs rely upon Page v. School District of Philadelphia,45 F. Sup.2d 457 (E.D.Penn. 1999). The case involved a middle school student's claim against the school district and employees of the school district. The plaintiff was injured in an assault perpetrated by other students. The plaintiff claimed that the school officials had notice of prior incidents of harassment by fellow students and that there had, in fact, been a specific agreement by the school district to protect the plaintiff and ensure her safety. The District Court held that there was no special relationship giving rise to a duty to protect the minor plaintiff CT Page 11222 and that the school's express agreement to protect did not give rise to a state-created danger.
The plaintiffs cite the case of L.W. v. Grubbs, 974 F.2d 119 (9th Cir. 1992), which relied heavily on the Cornelius case and the "special relationship" and "state created danger" exceptions. As stated above,Cornelius, has been specifically overruled. In light of Collins, the special relationship exception does not apply to the employer-employee relationship and the state-created danger exception does not apply to negligence claims.
The plaintiffs also rely upon Collier by Collier v. William Penn SchoolDistrict, 956 F. Sup. 1209 (E.D.Penn. 1997). That case was reversed without opinion by the Third Circuit Court of Appeals. Collier v. WilliamPenn School District, 191 F.3d 444 (3d Cir. 1999).
The Second Circuit Court of Appeals has also long held that the United States Constitution does not impose a duty on public employers to provide a safe work environment. In McClary v. O'Hare, 786 F.2d 83 (2d Cir. 1986), the plaintiff's decedent died in the course of his employment when a wire cable on a mobile truck crane being operated by a fellow employee broke, causing the boom of the crane to fall and strike the decedent. The plaintiff made, among other claims, a claim for violation of his substantive due process rights by the Superintendent of the Highway Department which employed the plaintiff. The specific allegations were as follows:
 [T]he Highway Department and its Superintendent deliberately disregarded and violated state laws, rules, and regulations for occupational safety and the operation of mobile cranes thereby creating a high risk of danger to the decedent. . . . [The plaintiff also alleged] that an established state procedure — the alleged policy of disobeying state and federal safety regulations — caused [the decedent] to be deprived of his life. . . .
Id. at 85, 86 (emphasis added).
The Court noted that the plaintiff had attempted to circumvent the clear rule establishing that mere negligence could not give rise to a due process violation. Id. at 85 citing Daniels v. Williams, 474 U.S. 327,106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). The Second Circuit, nonetheless, rejected the plaintiff's attempt to elevate the claim "from one sounding in state tort law to one of constitutional dimensions". Id. at 86. CT Page 11223
Citing Daniels, 106 S.Ct. at 666, the Second Circuit noted that "the only fact distinguishing [the case before it] from an ordinary tort action brought by an employee against an employer [was] the identity of that employer". Id. at 89. While noting that the tragic accident raised sympathies in favor of the plaintiff, the Court nonetheless held that the improper actions taken by a public employer did not violate an employee's substantive due process rights "simply because that employer is a governmental official". Id. at 89. "[U]nder these circumstances, the substantive component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer." Id.
The plaintiffs have not distinguished the Collins decision or any applicable Second Circuit case law, specifically McClary, supra, and its progeny. McClary continues to be cited as good law. See, Thomas v. City ofNew York, 657 N.Y.S.2d 634 (N.Y.App. 1997) ("[T]hese personal injury claims by a governmental employee for damages caused by another governmental employee do not state a claim pursuant to42 U.S.C. § 1983. (See, Collins v. City of Harker Heights,503 U.S. 115, 128; McClary v. O'Hare, 786 F.2d 83, 88-89")); Sussman v.New York City Health and Hospitals Corporation, 1997 WL 334964 (S.D.N.Y. 1997) (Citing McClary for the proposition that "the substantive component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer"); Burnett v. Carothers, 1998 WL 136177 (D.Conn. 1998) (Burns, J.) (Citing McClary for the proposition that there is no substantive due process claim permitted for a § 1983 action for death of a county employee while on the job); Adler v. County of Nassau113 F. Sup.2d 423 (E.D.N.Y. 2000) ("To state a claim of denial of substantive due process in connection with the termination of public employment, the employer's conduct must be shown to be arbitrary and intentionally abusive. McClary v. O'Hare, 786 F.2d 83, 88 (2d. Cir. 1986)"); Schwartz v. Brown, 857 F. Sup. 291 (S.D.N.Y. 1994) ("the Second Circuit has held that "the substantive component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer.' McClary v. O'Hare, 786 F.2d 83, 89 (2d Cir. 1986) (holding that government actor must intentionally abuse his or her power as a state official to harm state employee in order to sustain substantive due process violation) . . . As such the substantive due process protection afforded public employees in this circuit is limited."); Dillon v.Boyce, 1995 WL 116476 (E.D.N.Y. 1995) ("Employer conduct that constitutes intentional abuse of persons under an employer's control may be cognizable under substantive due process. McClary v. O'Hare, 786 F.2d 83,88 (2d Cir. 1986)"); Williams v. Josephs, 1993 WL 403969 (S.D.N Y 1993) (quoting McClary's statement that "we do not think that improper actions CT Page 11224 taken by employers violate an employee's substantive due process rights simply because that employer is a government official"; granting Motion for Summary Judgment on § 1983 claim against employer and fellow employee who allegedly assaulted the plaintiff with a stapler at work).
The plaintiff's attempt to distinguish the Collins decision by claiming that in this case the plaintiffs' allegations are that Alfred Dupuis and Karen Mehigan "created and/or contributed to the creation of the danger." However, there are no Second Circuit decisions or any United States Supreme Court decisions applying the alleged state-created danger exception in the context of an employer-employee or employee-fellow employee substantive due process claim. Indeed, as the Court in White v.Lemacks observed, the "state-created danger" exception recognized inCornelius has been supplanted by Collins. "Under Collins, government officials violate the substantive due process rights of a person not in custody only by conduct "that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' Collins,503 U.S. at 128, 112 S.Ct. at 1070. See also Lewis, 523 U.S. at ___,118 S.Ct. at 1717 (citing Collins)." 183 F.3d at 1258.
When we look at the facts of White and McClary, it becomes clear that the allegation that Alfred Dupuis and Karen Mehigan "created and/or contributed to the creation of the danger" simply does not constitute conduct that is arbitrary or conscience shocking in a constitutional sense. In White the employer also created the dangerous condition in which the plaintiff nurses were required to work in close contact with prison inmates, including one who was being held for aggravated assault. The Court found that such conduct was not conscience shocking, but, rather, was "analogous to a fairly typical state-law tort claim." Id.
In McClary, the plaintiff's decedent died when a wire cable on a mobile truck crane operated by a fellow employee broke, causing the boom crane to fall and strike the decedent in the head. The plaintiff alleged that the employer, the Steuben County Highway Department, required the fellow employee to operate the crane without a certificate of competency required under New York law and created a high risk of danger to the decedent. The Court upheld the dismissal of the case because the employer's creation of a dangerous condition did not constitute a violation of the decedent's substantive due process rights:
 Daniels [v. Williams, 106 S.Ct. 662 (1986)] held that the due process clause was intended to "prevent governmental power from being `used for purposes of oppression.'" . . . Much of the case law on substantive due process was developed with this notion implicit, if not expressed; in Johnson [v. Glick,
CT Page 11225 481 F.2d 1028 (2d. Cir.), cert denied 414 U.S. 1033, 94 S.Ct. 462 (1973)] e.g., the plaintiff was substantially under the state's control and many of the cases permitting recovery on a substantive due process ground for personal injury or death involve a person in state custody or under the state's control. Such persons are clearly subject to abuses of the government's significant power over them. . . . Where the government's control is lessened, so is its duty, and its failings are less likely to be of constitutional proportions cognizable under section 1983.
786 F.2d at 88-89.
For the foregoing reasons the court finds that the plaintiffs have failed to state a claim under 42 U.S.C. § 1983 and grants the Motion to Strike the Sixth and Seventh Counts.
Tenth and Eleventh Counts for Loss of Consortium
The Tenth and Eleventh Counts allege loss of consortium against Karen Mehigan and Alfred W. Dupuis, based on the allegations set forth in the Sixth and Seventh Counts. The Sixth and Seventh Counts fail to state claims upon which relief may be granted, as set forth above. Being derivative, the loss of consortium counts must also fail. Murray v.Commissioner of Transportation, 31 Conn. App. 752, 757, 626 A.2d 1328
(1993). Therefore, the Motion to Strike the Tenth and Eleventh Counts is granted
Bystander Emotional Distress
The common law rule in Connecticut as in other jurisdictions was that there could be no recovery for so-called bystander emotional distress. The Connecticut Supreme Court stated the common law rule in Strazza v.McKittrick, 146 Conn. 714, 719, 156 A.2d 149 (1959):
 [A plaintiff] cannot recover for injuries occasioned by fear of threatened harm or injury to the person or property of another. Such injuries are too remote in the chain of causation to permit recovery. Even where a plaintiff has suffered physical injury in the accident, there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another.
CT Page 11226Id. at 719 (citations omitted).
In Clohessy v. Bachelor, 237 Conn. 31, 675 A.2d 852 (1996), the Supreme Court first recognized a cause of action for bystander emotional distress under Connecticut law. In doing so the Court imposed a number of specific conditions on the cause of action. Id. at 51.
Among the grounds cited for imposing the specific limitations and conditions were the Court's awareness "that the application of pure rules of foreseeability could lead to unlimited liability," "fears of flooding the courts with spurious and fraudulent claims," "problems of proof of the damage suffered," "exposing the defendant to an endless number of claims," and "economic burdens on the industry." Id. at 50 (citations and internal quotations marks omitted).
Recognizing that the specific limitations it was imposing were "somewhat arbitrary," the Court nonetheless stated that the limitations were "necessary in order not to leave the liability of a negligent defendant open to undue extension by the verdict of sympathetic juries, who under our system must define and apply any general rule to the facts of the case before them." Id. at 51 (citations and internal quotation marks omitted).
The Court imposed four specific limitations on the cause of action:
 [W]e conclude that a bystander may recover damages for emotional distress under the rule of reasonable foreseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response.
237 Conn. at 56.
The Complaint certainly satisfies the first, third and fourth CT Page 11227 conditions. However, it does not satisfy the second requirement, that is, that the bystander's emotional injury must be caused by the contemporaneous sensory perception of the event or conduct that causes the injury or by viewing the victim immediately after the injury-causing event if no material change has occurred with respect to the victim's location and condition.
The Clohessy Court referred to this particular limitation as being necessary to avoid "limitless liability". Id. at 44. "Without such perception, the threat of emotional injury is lessened and the justification for liability is fatally weakened." Id. (citation 
internal quotation marks omitted; emphasis added).
The plaintiffs have alleged that "[t]he attack at the lottery shooting, which occurred approximately between 8:30 a.m. and 8:44 a.m., received extensive and prompt coverage in the local media. . . . [T]he plaintiff, Margaret Logan, began to observe news reports regarding this incident shortly before 9:00 a.m." They also allege that Margaret Logan "observed extensive televised news coverage from the scene . . . knowing that her husband had likely been a victime of Matthew Beck, thereby causing her great mental distress." Count Five, ¶ 63.
The foregoing does not allege that the plaintiff either contemporaneously perceived the event or conduct that caused the injury or viewed the decedent immediately after the injury-causing event. The knowledge of the tragic events which she gained from media accounts doubtless produced emotional distress in the plaintiff, but such emotional distress clearly does not fit within the narrowly circumscribed requirements of Clohessy, and, therefore, is not actionable.
For the foregoing reasons, the Motion to Strike the Fifth Count is hereby granted.
By the court,
Aurigemma, J.