Phyllis WHITE, acting as Administrator for the Estate of Jean Danison, William Rostad, acting as Administrator for the Estate of Jean Danison, Plaintiffs-Appellants,

v.

Bill LEMACKS, individually and in his official capacity as former Sheriff of Clayton County, Georgia, Stanley Tuggle, individually and in his official capacities as Sheriff and Deputy Sheriff of Clayton County, Georgia, Clayton County, Georgia, Defendants-Appellees.

No. 98-9513.

United States Court of Appeals,

Eleventh Circuit.

Aug. 10, 1999.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:98-cv-2063-CAM), Charles A. Moye, Jr., Judge.

Before CARNES, Circuit Judge, HILL, Senior Circuit Judge, and HOEVELER[*], Senior District Judge.

CARNES, Circuit Judge:

Plaintiffs William Rostad, acting as administrator for the estate of Jean Danison, and Phyllis White appeal the district court's dismissal of their 42 U.S.C. § 1983 complaint against the defendants, who are Clayton County Sheriff Billy Lemacks, Deputy Sheriff Stanley Tuggle, and Clayton County, Georgia. The district court dismissed the complaint for failure to state a claim upon which relief may be granted. For the reasons set forth below, we affirm the district court's judgment.

## I. BACKGROUND

### A. FACTS

According to the amended complaint, White and Danison were nurses in the employ of Prison Health Services, Inc., which was under contract to provide medical services to the inmate population at the Clayton County Jail. As a condition of their job, and while performing their nursing duties at the jail, they were required to be in close contact with inmates and their freedom of movement and ability to flee or otherwise protect themselves were limited. Although they had received assurances from agents of the defendants that

[*]The Honorable William M. Hoeveler, Senior United States District Judge for the Southern District of Florida, sitting by designation.

adequate security measures would be in place to protect them from injury, in fact, inadequate steps were taken to protect them.

On July 23, 1996, while carrying out their nursing duties in the jail infirmary, White and Danison were attacked and brutally beaten by an inmate who was being held on aggravated assault charges. During the attack, White's head was slammed repeatedly against the floor while the inmate threatened to kill her. She was physically beaten about the head and body. Danison, too, was physically beaten by the inmate. At the time of the attack, one deputy sheriff had been assigned for White and Danison's protection, but that deputy was easily subdued. The attack continued until additional law enforcement personnel responded and the inmate was restrained.

## B. PROCEDURAL HISTORY

In their initial complaint, plaintiffs brought claims against Sheriff Lemacks and Deputy Sheriff Tuggle in their individual and official capacities, and against Clayton County, Georgia, for substantive due process violations under both the Fifth and Fourteenth Amendments to the United States Constitution. The complaint also alleged violations of Georgia law and sought punitive damages.

Defendants responded with a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). Their motion argued that the defendants did not owe plaintiffs a duty to protect them from a third party and did not have a constitutional obligation to provide a safe workplace. It also asserted that all of the defendants had qualified immunity, sovereign immunity, or official immunity, and that the request for punitive damages should be dismissed. Plaintiffs filed a motion to amend, attaching the proposed amended complaint. The amended complaint alleged additional facts, and it dropped the Fifth Amendment substantive due process claims and the Georgia law claims. The district court granted the plaintiffs' motion to amend the complaint, but also granted the defendants' motion to dismiss the remaining claims for failure to state a claim. The plaintiffs appeal the dismissal of their Fourteenth Amendment substantive due process claims.

## II. DISCUSSION

2

We review *de novo* the district court's dismissal of a complaint for failure to state a claim upon which relief could be granted. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 948 (11th Cir.1997). When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs. *See Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir.1998), *cert. denied,* --- U.S. ----, 119 S.Ct. 1027, 143 L.Ed.2d 38 (1999). We have done that in setting out the facts, above. A Rule 12(b)(6) motion should be granted only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitle them to relief. *See id.*

We are bound to follow prior panel decisions, except where they have been overruled either by an en banc decision of this Court or a decision of the Supreme Court. *See, e.g., United States v. Steele,* 147 F.3d 1316, 1317-18 (11th Cir.1998) (en banc); *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993). This case involves the second part of that exception.

In *Cornelius v. Town of Highland Lake,* 880 F.2d 348 (11th Cir.1989), we said that state and local government entities could be held liable for substantive due process violations for their failure to protect victims from harm caused by third parties where the state had a "special relationship" with the victim, or where the state, through its affirmative acts, put the victim in "special danger" of harm. Our holding in *Cornelius* is best described against the specific facts of that case. Plaintiff Harriet Cornelius was working at the Highland Lake town hall as the Town Clerk when she was abducted at knife point by two prison inmates and forced to accompany them for three days, during which time they terrorized her with threats of physical violence. The inmates were in the vicinity of town hall because the Town of Highland Lake had requested the Alabama Department of Corrections to provide inmate work squads to the town for maintenance and public works purposes. Despite the Department's policy that only nonviolent, "minimum custody" property offenders could be assigned to the work squads, one of the attackers approved for the Highland Lake assignment was serving a long sentence for armed robbery and had a history of violent crime. The tools provided to the inmates for their work included axes, picks, machetes, knives, and saws. An unarmed town

3

employee supervised the inmates during their work, *see Cornelius,* 880 F.2d at 349-50, but the measures employed to protect Cornelius and others who worked at the town hall were clearly inadequate to ensure their safety.

Cornelius brought a suit under § 1983 against the Town of Highland Lake, its Mayor, a member of the City Council, and officials of the Department of Corrections, alleging a violation of her substantive due process rights. She claimed that the inmates were able to abduct her only because of the officials' gross negligence and deliberate indifference to her rights. *See id.* at 351. The district court granted summary judgment for the defendants, but this Court reversed. Surveying prior cases, we concluded that government officials could be held liable under a substantive due process theory for injuries caused by third parties if there was a "special relationship" between the government and the victim, or if the government created a "special danger" to the victim that resulted in her injuries. *See id.* at 352-55 (citing *Wright v. City of Ozark,* 715 F.2d 1513 (11th Cir.1983) for the special relationship doctrine, and *Jones v. Phyfer,* 761 F.2d 642 (11th Cir.1985) for the special danger doctrine). We concluded in *Cornelius* that there were genuine issues of material fact, both as to whether a special relationship existed between Cornelius and the town officials and as to whether she faced a special danger from the work squad inmates, *see id.* at 355-59, which is to say that if she could prove the facts asserted, Cornelius would establish that her substantive due process rights had been violated by the government agencies.

In the special relationship analysis, we noted that "if Mrs. Cornelius wished to continue serving as the town clerk, she had to work in the environment created by the town officials; one that included routine exposure to prison inmates around the town hall." *Id.* at 355. We viewed the employment relationship between Cornelius and the town as a special relationship giving rise to a substantive due process duty on the part of the state to protect her from harm.

Under the special danger portion of the analysis, we observed "that the town and prison officials affirmatively acted together in bringing the inmates into the community of Highland Lake via the work squad program." *Id.* at 357. Moreover, there was evidence indicating that: (1) the town officials assigned to

4

supervise the prisoners had no training in handling prisoners; (2) the defendants allowed the prisoners access to tools and weapons; and (3) the inmates were often unsupervised and free to roam. *See id.* at 357-58. That was enough, we thought, to implicate substantive due process under the "special danger" analysis.

Likewise, in this case, working around inmates was a necessary part of the plaintiffs' job,[1] and they have alleged that these governmental defendants failed to take adequate measures to protect them from the inmates and were deliberately indifferent to their safety. Accordingly, if *Cornelius* is still good law, these plaintiffs probably have pleaded a valid substantive due process claim. But *Cornelius* is not the last word on the subject.

Less than three years after our *Cornelius* decision, the Supreme Court in *Collins v. City of Harker Heights,* 503 U.S. 115, 127, 112 S.Ct. 1061, 1069, 117 L.Ed.2d 261 (1992), unanimously rejected as "unprecedented" a claim that a government employer had a federal constitutional obligation to provide its employees (as distinguished from individuals such as prisoners whom it had deprived of their liberty) with certain minimal levels of safety and security in the workplace. In that case, an employee of the City of Harker Heights sanitation department died of asphyxia after entering a manhole to unstop a sewer line. His widow brought a § 1983 action alleging that under the Fourteenth Amendment, her husband "had a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the city of Harker Heights' custom and policy of deliberate indifference toward the safety of its employees." *Collins,* 503 U.S. at 117, 112 S.Ct. at 1064. Her complaint stated that the city had violated that constitutional right by "following a custom and policy of not training its employees about the dangers of working in sewer lines and manholes, not providing safety equipment at jobsites, and not providing safety warnings." *Id.*

---

[1]Strictly speaking, the plaintiffs were not employees of the County, but were employees of a corporation under contract with the county to provide nursing services to the jail. Nevertheless, they were required as a condition of their employment to work in the jail infirmary, and the parties have treated this situation as equivalent to the plaintiffs having an employment relationship with the County itself. Because doing so does not affect the outcome, and, if anything, favors the plaintiffs who lose this appeal anyway, we will treat these plaintiffs as if they had been employed directly by the County.

The Supreme Court read Collins' claim as advancing two theories. First, that "the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace[.]" *Id.* at 126, 112 S.Ct. at 1069. Second, that "the city's 'deliberate indifference' to [her husband's] safety was arbitrary government action that must 'shock the conscience' of federal judges." *Id.*

In rejecting those two theories, the Court emphasized that consensual employment relationships are different from custodial relationships, which arise from incarceration and other involuntary confinement. It indicated that where non-custodial relationships are involved, the government can be held liable under the substantive due process clause only where an official's act or omission is "arbitrary[ ] or conscience shocking," *id.* at 128, 112 S.Ct. at 1070, an indication that was confirmed in *County of Sacramento v. Lewis,* 523 U.S. 833, ----, 118 S.Ct. 1708, 1717, 140 L.Ed.2d 1043 (1998). The *Collins* Court held that the city's alleged failure to train or warn its employees about known risks was not arbitrary or conscience shocking in the constitutional sense. 503 U.S. at 128-29, 112 S.Ct. 1070. The Court explained its reasoning as follows:

> Our refusal to characterize the city's alleged omission in this case as arbitrary in a constitutional sense rests on the presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces. Decisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country. The Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions. Nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm.

*Id.* (internal quotations and citations omitted).

After *Collins,* it appears the only relationships that automatically give rise to a governmental duty to protect individuals from harm by third parties under the substantive due process clause are custodial relationships, such as those which arise from the incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of themselves. *Collins* makes it clear that the fact a government employee would risk losing her job if she did not submit to unsafe job conditions does not convert a voluntary employment relationship into a custodial relationship, and therefore does not entitle the employee to constitutional protection from

6

workplace hazards, one of which can be harm caused by third parties. As the Court put it, the Due Process Clause does not guarantee government employees "a workplace that is free of unreasonable risks of harm." *Collins,* 503 U.S. at 129, 112 S.Ct. at 1070.

Thus, *Collins* directly conflicts with and overrules the part of *Cornelius* holding that a government employment relationship, in and of itself, is a "special relationship" giving rise to a constitutional duty to protect individuals from harm by third parties. As a result, the part of *Cornelius* adopting, or perpetuating, a "special relationship" doctrine that guarantees government employees constitutional protection from unreasonable risks of harm in the workplace is no longer good law.

That is not the only part of *Cornelius* felled by *Collins.* The "special danger" doctrine employed in *Cornelius* has been supplanted as well. Under *Collins,* government officials violate the substantive due process rights of a person not in custody only by conduct "that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Collins,* 503 U.S. at 128, 112 S.Ct. at 1070. *See also Lewis,* 523 U.S. at ----, 118 S.Ct. at 1717 (citing *Collins* ). That standard is somewhat amorphous, but the *Collins* opinion does provide some guidance for applying it.

The opinion reminds us, for example, that the Supreme Court has been "reluctant to expand the concept of substantive due process," and that judicial self-restraint requires courts to exercise the utmost care in this area. *See Collins,* 503 U.S. at 125, 112 S.Ct. at 1068. More specifically, we are told in the *Collins* opinion that when governmental action or inaction reflects policy decisions about resource allocation (as is often the case), those decisions are better made "by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." *Id.* at 128-29, 112 S.Ct. at 1070. In other words, when someone not in custody is harmed because not enough resources were devoted to their safety and protection, that harm will seldom, if ever, be cognizable under the Due Process Clause. Finally, we have the reasoning and holding in *Collins* that the city's breach of its duty to provide a safe work environment is not arbitrary or conscience-shocking in a constitutional sense, but instead is "analogous to a fairly typical state-law tort claim." *Id.* at 128, 112 S.Ct. at 1070.

7

In determining whether the conduct alleged in *Cornelius* or in this case was "arbitrary or conscience shocking" under *Collins,* it is important to note that none of the plaintiffs in *Collins, Cornelius,* or this case alleged that the state intended to harm them or their relatives, but only that the state had been, at most, deliberately indifferent to their safety. Although *Lewis* leaves open the possibility that deliberate indifference on the part of the state will "shock the conscience" in some circumstances, *see* 523 U.S. at ----, 118 S.Ct. at 1718-20, it is clear after *Collins* that such indifference in the context of routine decisions about employee or workplace safety cannot carry a plaintiff's case across that high threshold.

As it was in *Collins,* so it was in *Cornelius,* and so it is in this case. The decisions to be made by government and its officials were materially identical in all three cases. In *Cornelius,* the question was whether to provide additional supervision or other protection to employees when prison inmates are working around the job site; in *Collins,* the question was whether to provide better training and other safeguards to city employees working in hazardous conditions; and, in this case, the question was whether to provide more guards or other safeguards for the protection of nurses working in the jail infirmary. All three questions involved resource-allocation choices better resolved by locally elected representatives than by federal judges. And although all three claims have been dressed up in substantive due process clothing, the naked truth is that they are actually "analogous to [ ] fairly typical state-law tort claim[s]" that the government or its agents "breached its duty of care ... by failing to provide a safe work environment." *Collins,* 503 U.S. at 128, 112 S.Ct. at 1070. All three cases should have the same result, and the Supreme Court in *Collins* has dictated what that result must be.

To summarize, the "special relationship" and "special danger" doctrines applied in our decision in *Cornelius* are no longer good law, having been superseded by the standard employed by the Supreme Court in *Collins.* Under *Collins,* state and local government officials violate the substantive due process rights of individuals not in custody only when those officials cause harm by engaging in conduct that is "arbitrary, or conscience shocking, in a constitutional sense," and that standard is to be narrowly interpreted and applied. While deliberate indifference to the safety of government employees in the workplace may constitute a tort

8

under state law, it does not rise to the level of a substantive due process violation under the federal Constitution.

One last item of business remains. In the seven years since *Collins,* we have questioned at least five times whether *Cornelius* retains any viability after *Collins. See Mitchell v. Duval County Sch. Bd.,* 107 F.3d 837, 838-39 & n. 3 (11th Cir.1997) ("[T]here is some question whether *Cornelius* 's special danger theory of liability remains good law" because "*Cornelius* may not have survived [*Collins* ]."); *Hamilton v. Cannon,* 80 F.3d 1525, 1531 n. 6 (11th Cir.1996) ("*Cornelius* ' viability is questionable in light of the Supreme Court's subsequent decision in [*Collins* ]."); *Lovins v. Lee,* 53 F.3d 1208, 1211 (11th Cir.1995) ("[T]here is considerable doubt about whether [*Cornelius]* survives the Supreme Court's subsequent *Collins* decision."); *Wooten v. Campbell,* 49 F.3d 696, 700 n. 4 (11th Cir.1995) ("There is some question whether this court's holding in *Cornelius* survive[s] the Supreme Court's decision in [*Collins* ]."); *Wright v. Lovin,* 32 F.3d 538, 541 n. 1 (11th Cir.1994) ("[T]here is some doubt whether our holding in *Cornelius* has survived the Supreme Court's recent holding in *[Collins* ].").  In the face of the obvious, it seems we have never quite been able to say goodbye to *Cornelius,* always avoiding the question of whether it has actually left the realm of living precedent in the wake of *Collins.*  We avoided the question in each of the cited cases by factually distinguishing *Cornelius* in one way or another, and concluding that, even if *Cornelius* were still good law, the result in the case would be the same, i.e., judgment against the plaintiff.

Enough is enough. Like a favorite uncle who has passed away in the parlor, *Cornelius* needs to be interred. We do so now. Recognizing that it was dealt a fatal blow by *Collins,* we pronounce *Cornelius* dead and buried. The law on substantive due process when a citizen who is not in custody claims that a governmental unit, agency, or official has caused her harm is supplied by the *Collins* decision, which occupies the field to the exclusion of anything we said about such cases in *Cornelius. See also Lewis,* 523 U.S. at ----, 118 S.Ct. at 1717.

### III. CONCLUSION

The district court was correct in granting the defendants' motion to dismiss for failure to state a claim,

9

because the plaintiffs failed to allege a violation of substantive due process.

AFFIRMED.