In re JOHNSTON INDUSTRIES, INC., Johnston Industries Alabama, Inc., Textest International Fabric Testing Corp. F/K/A Johnston Industries Composite Reinforcements, Inc., Greater Washington Investments, Inc., J.I. Georgia, Inc. F/K/A T.J. Beall Co. and Autographix, Inc., Debtors.

Johnston Industries Alabama, Inc., Plaintiff,

v.

National Contract Associates, Inc., Defendant.

Bankruptcy Nos. 03–40293, 03–40294, 03–40295, 03–40296, 03–40297, 03–40298. Adversary No. 03–4036.

United States Bankruptcy Court, M.D. Georgia, Columbus Division.

Sept. 15, 2003.

G. Frank Nason, IV, William D. Matthews, Atlanta, GA, for Plaintiff.

Ward Stone, Jr., George H. McCallum, Macon, GA, for Defendant.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Defendant National Contract Associates, Inc.'s Motion to Dismiss Count II of Plaintiff's Complaint. This is a core matter within the meaning of 28 U.S.C. §§ 157(b)(2)(E) and (O). After a holding a hearing on the motion on August 26, 2003, and after considering briefs filed by the parties, the Court will deny the motion.

### Background

Plaintiff Johnston Industries Alabama, Inc., the Chapter 11 debtor in this case, filed a complaint against Defendant for

damages, injunctive relief, contract recission, and turnover of postpetition receivables. Count II of the complaint alleged a claim under Georgia's Uniform Deceptive Trade Practices Act ("UDTPA"). O.C.G.A. §§ 10–1–370 to 10–1–375 (2000). Defendant responded with a motion to dismiss Count II pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable in bankruptcy through Federal Rule of Bankruptcy Procedure 7012. Defendant's motion alleged that Plaintiff lacked standing to sue under the UDTPA because Plaintiff is not a consumer of Defendant's. At the hearing, Defendant further argued that the UDTPA requires some injury to consumers.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs." *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]" the motion should be denied. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "Because this standard imposes such a heavy burden on the defendant, Rule 12(b)(6) motions are rarely granted." *Jones v. Mann (In re Jones)*, 277 B.R. 816, 819 (Bankr.M.D.Ga.2001) (internal citations omitted).

Plaintiff has made the following allegations in its complaint: Plaintiff and Defendant entered into a contract under which Defendant was to be the exclusive distributor of certain fabrics manufactured by Plaintiff and under which Plaintiff was to be Defendant's exclusive supplier of such fabrics. Defendant breached the contract by selling at a reduced price an inferior fabric produced by a manufacturer other than Plaintiff and representing such inferior fabric as manufactured by Plaintiff. Defendant's actions caused confusion or misunderstanding as to the source of the fabric. For purposes of deciding this motion, the Court will accept these allegations as true.

### Analysis

In its brief, Defendant argued that only consumers have standing to sue under Georgia's UDTPA, and because Plaintiff is not a consumer of Defendant, Plaintiff does not have standing to bring a deceptive trade practices claim. At the hearing, Defendant added that Plaintiff must have alleged some injury to consumers for its complaint to state a claim.

■ The Court begins its analysis with the plain language of the statute, which provides that "[a] *person* likely to be damaged by a deceptive trade practice of another may be granted an injunction." O.C.G.A. § 10–1–373(a) (emphasis added). For purposes of the UDTPA, a person is defined as "an individual, *corporation*, government, or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity." *Id.* § 10–1–371(5) (emphasis added). Thus, the plain language of the statute requires only that the plaintiff is a person who has suffered an injury due to the deceptive trade practice of the defendant.[1] Nothing in the lan-

---

1. The UDTPA provides the following explanation of deceptive trade practices:

    (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

    (1) Passes off goods or services as those of another;

    (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsor-

guage of the statute requires the plaintiff to be a consumer or requires a consumer to be injured.

Notwithstanding the statute's plain language, Defendant has argued that its *purpose* is to protect consumers and that the scope of potential plaintiffs should be limited by that purpose. No legislative history is available for Georgia's UDPTA. However, the Georgia General Assembly sometimes includes a statutory provision in an Act that serves as a statement of purpose. For example, the Fair Business Practices Act of 1975 includes a provision that states, "The purpose of this part shall be to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state." O.C.G.A. § 10–I–391 (2000).[2] In contrast, the UDTPA does not include a statement of purpose.

The Revised Uniform Deceptive Trade Practices Act 1966 Revision ("Uniform Act"),[3] on which Georgia's UDTPA is based, includes extensive commentary. The prefatory note to the Uniform Act states that it was drafted because "[d]eceptive conduct constituting unreasonable interference with another's promotion and conduct of business is part of a heterogeneous collection of legal wrongs knows [sic] as 'unfair trade practices.' This type of conduct is notoriously undefined...." Unif. Deceptive Trade Practices Act 1966, Refs. & Annos., *available at* http://www.law.upenn.edu/bll/ulc/fnact99/1920_69/rudtpa66.pdf. The Uniform Act was advanced because "the need for uniformity is great." *Id.* In other words, the purpose of the Uniform Act is to provide uniformity of law in the area of unfair trade practices, not—as Defendant argues—to protect consumers.

In addition to statutory purpose, Defendant has relied on case law to support its position. While never specifically addressing the question of whether a party must be a consumer or show consumer injury to sue under the UDTPA, Georgia courts have suggested that these requirements

ship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style of model, if they are of another;

(8) Disparages the goods, services, or business of another by false or misleading representation of fact;

(9) Advertises goods or services with intent not to sell them as advertised;

(10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.
O.C.G.A. § 10–1–372(a).

**2.** As this statement of purpose indicates, Georgia has an act separate from the UDTPA expressly for consumer protection. O.C.G.A. §§ 10–1–390 to 10–1–407 (2000 & Supp. 2003).

**3.** The Uniform Act was withdrawn in 2000. Unif. Deceptive Trade Practices Act 1966, Refs. & Annos.

are not necessary. In *Friedlander v. HMS–PEP Products, Inc.*, 226 Ga.App. 123, 485 S.E.2d 240 (1997), the plaintiff held a patent for a weight loss product. His product was not on the market, nor would it be so for several years. Nevertheless, he sued the manufacturer of a different weight loss drug on the ground that the manufacturer's marketing of its product without any substantiation of safety or effectiveness discouraged investment in the plaintiff's product. *Id.* at 123–24, 485 S.E.2d at 241–242. The court noted that the plaintiff did not allege that he was a consumer of the defendant's product. *Id.* at 124 n. 4, 485 S.E.2d at 241 n. 4. The court found the plaintiff lacked standing to bring a UDTPA, not because he was not a consumer, but because of the remoteness and speculative nature of his potential injury. *Id.* at 124, 485 S.E.2d at 242. The court stated that in order to sue under the UDTPA, the plaintiff must "show the existence of some interest he possesses capable of sustaining damages from [the defendant's] actions. At the very minimum, [the plaintiff] must show some causal connection between something [the defendant] has done and his own nonspeculative damages in order to receive relief." *Id.* at 125, 485 S.E.2d at 242. Thus, the minimum standard as articulated by the Georgia Court of Appeals requires neither that the plaintiff be a consumer, nor a showing of injury to a consumer.

In *Kason Industries, Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199 (11th Cir.1997), the court had to determine the proper statute of limitations for a trade dress infringement suit, which is essentially the same as a trademark infringement suit, brought under the Lanham Act. *Id.* at 1203. In its analysis, the court compared Georgia's UDTPA to its Fair Business Practices Act ("FBPA"). *Id.* at 1203–04. First, the court distinguished the FBPA from the Lanham Act on the basis that "the FBPA is essentially a consumer protection statute." *Id.* at 1203. The court then distinguished the FBPA from the UDTPA, stating, "[I]t is clear to us that the FBPA is significantly different from the UDTPA and the Lanham Act, because of the former statute's focus on the consumer (as opposed to the commercial) marketplace." *Id.* at 1204. Thus, the Eleventh Circuit Court of Appeals has interpreted Georgia's UDTPA as having commercial, rather than consumer, application.

Defendant cited *Birdsong v. Enforcer Products, Inc.*, 235 Ga.App. 132, 508 S.E.2d 769 (1998), for the proposition that while businesses may fall under the protection of the UDTPA, they can only do so in situations distinguishable from those in this case. *Birdsong* raises the question of whether the plaintiffs claims—including a deceptive trade practices claim—should have been raised as compulsory counterclaims in an earlier federal court proceeding. *Id.* at 132, 508 S.E.2d at 770. Nothing in the opinion explains or otherwise indicates the relationship among the parties. Rather, all the facts set forth by the court are limited to procedural history. *Id.* There is no discussion of standing under or the purpose of the UDTPA. As a result, the Court finds the case to be unhelpful to its analysis.

Because there are no Georgia cases directly on point, the Court may look to other jurisdictions. Such an analysis is encouraged by the UDTPA, which provides that it "shall be construed to effectuate its general purpose to make uniform the law of those states which enact it." O.C.G.A. § 10–1–375.

Defendant has offered the Illinois case of *Law Offices of William J. Stogsdill v. Cragin Federal Bank for Savings*, 268 Ill. App.3d 433, 206 Ill.Dec. 559, 645 N.E.2d

564 (1995), as instructive. The issue in *Stogsdill* was whether Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12, applied to "disputes between businessmen who were not consumers of each other's services." *Id.* at 565. The court noted that the Act protects consumers. *Id.* It then defined a consumer as "any person who purchases merchandise not for resale in the ordinary course of his business." *Id.* at 566 (citing 815 ILCS 505/1(e)). Plaintiff in the case at bar would not satisfy that definition of a "consumer." Unfortunately for Defendant, the Illinois Consumer Fraud and Deceptive Business Practices Act is not equivalent to Georgia's UDTPA. Illinois has separately and additionally codified a version of the Uniform Act, which is virtually indistinguishable from Georgia's UDTPA, at 815 ILCS 510/1 to 510/7. Because the court was not construing a version of the Uniform Act in *Stogsdill,* the case is irrelevant to this Court's analysis.

Defendant has also referred the Court to Colorado cases, contending that in Colorado, a consumer injury is necessary to a deceptive trade practices claim. Defendant appears to be correct. The Colorado Consumer Protection Act ("CCPA") "was enacted to regulate commercial activities and practices which, 'because of their nature, may prove injurious, offensive, or dangerous to the public.' " *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 147 (Colo.2003) (quoting *People ex rel. Dunbar v. Gym of Am., Inc.,* 177 Colo. 97, 493 P.2d 660, 667 (1972)). One of the elements of a prima facie case under the CCPA is a significant impact on the public as consumers. *See, e.g., id.* at 147. However, this Court is not inclined to follow the reasoning of the Colorado courts. First, nothing in the Georgia case law suggests such a requirement. To the contrary, the Georgia case law suggests that the plaintiff need not be a con-

sumer and that the plaintiff is the only party who needs to suffer a probable injury. Furthermore, while the CCPA adopts some of the language of the Uniform Act, it also includes significant differences, which diminishes its relevance in interpreting Georgia's UDTPA. *Compare* O.C.G.A. §§ 10–1–370 to 10–1–375 *with* C.R.S.A. §§ 6–1–101 to 6–1–115.

In contrast to the Illinois and Colorado cases, the Delaware Supreme Court has interpreted a version of the Uniform Act that is virtually indistinguishable in substance from Georgia's UDTPA. In *Grand Ventures, Inc. v. Whaley,* 632 A.2d 63 (Del. 1993), the court considered whether a consumer had standing to sue under Delaware's Deceptive Trade Practices Act ("DTPA"). *Id.* at 66. The plaintiff, a business, had purchased insurance from the defendant. After the plaintiff's place of business was destroyed by fire, it learned that it was not insured. *Id.* at 65–66. The court found that the plaintiff lacked standing to sue under the DTPA because it was a consumer of the defendant. *Id.* at 70. "The Act is intended to address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business. Unlike the Consumer Fraud Act, the DTPA is not intended to redress wrongs between a business and its customers." *Id.* at 65. The court distinguished between the DTPA and Delaware's Consumer Fraud Act ("CFA"). *Id.* at 70. While consumers may sue under the CFA, standing under the DTPA requires that the plaintiff "has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another." *Id.* Because the plaintiff in the case was solely a consumer of the defendant, it had no standing to sue under the DTPA. *Id.*

The Colorado and Delaware cases demonstrate two extremes. In Colorado,

the plaintiff must be a consumer; in Delaware the plaintiff must not be solely a consumer. After considering the plain language of the statute, the commentary of the Uniform Act, and the case law from Georgia courts, the Court finds that the "consumer" issue is irrelevant to standing under Georgia's UDTPA. Rather, the plaintiff must be a person as defined by the UDTPA who is likely to be injured by the defendant's deceptive trade practice. Because Plaintiff's complaint alleges facts to meet this standard, Defendant's motion will be denied.

An Order in accordance with this Opinion will be entered on this date.

### ORDER

In accordance with the Memorandum Opinion entered on this date, Defendant National Contract Associates, Inc.'s Motion to Dismiss is hereby DENIED.