**Mary GOLTHY, as administratrix of the estate of Freddie Golthy, Jr., Plaintiff,**

v.

**The State of ALABAMA; the State of Alabama Department of Transportation; Bob Riley, as Governor in his official capacity; Bill Pryor, Attorney General of the State of Alabama in his official capacity, Jim R. Ippolito, in his individual and official capacity; Jerry Holt, in his individual and official capacity; Paul Bowlin, in his individual and official capacity; and Marvin Rowlin Graves, Defendants.**

No. CIV.A. 02–A–808–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 17, 2003.

Samuel Fisher, Byron R. Perkins, Kell A. Simon, Edward McF. Johnson, Roderick Twain Cooks, Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Plaintiff.

Laura Ellison Proctor, Lisa Wright Borden, Jason Michael Osborn, Baker Donelson Bearman Caldwell & Berkowitz PC, Birmingham, AL, Margaret L. Fleming, Sandra Ingram Speakman, Office of the Attorney General, Stacey S. Houston, Alabama Department of Transportation, Legal Division, Alice Ann Byrne, State Personnel Department, Montgomery, AL, for Defendants.

Marvin Roland Graves, Clio, AL, Pro se.

### MEMORANDUM OPINION

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This cause is before the court on a Motion to Dismiss (Doc. # 35) filed by Defendants State of Alabama; State of Alabama Department of Transportation ("DOT"); Bob Riley ("Riley"), Governor of the State of Alabama in his official capacity; Bill Pryor ("Pryor"), Attorney General of the State of Alabama, in his official capacity; Jim R. Ippolito ("Ippolito"), in his official capacity; Jerry Holt ("Holt"), in his official capacity; and Paul Bowlin ("Bowlin"), in his official capacity (collectively "the State Defendants"), and on a Motion to Dismiss (Doc. # 36) filed by Defendants Ippolito, in his individual capacity; Holt, in his individual capacity; and Bowlin, in his individual capacity (collectively "the Individual Defendants"). No Motion to Dismiss has been filed by Marvin Rowlin Graves ("Graves").

The Plaintiff, Mary Golthy, as Administratrix of the Estate of Freddie Golthy, Jr., originally filed a Complaint in this court in July 2002. She was allowed, by order of the court, to amend her Complaint On May 1, 2003. In her Amended Complaint, she brings claims for violation of 42 U.S.C. § 1983 against Defendants Riley, Pryor, Ippolito, Holt, Bowlin, the State of Alabama, and DOT (Count I), a claim for violation of 42 U.S.C. § 1981 and 1981(a) against all Defendants (Count II), a wrongful death claim against the State of Alabama, DOT, Graves, and Ippolito, Bow-

lin, and Holt in their official capacities (Count III), an outrageous conduct claim against all Defendants (Count IV), and a claim for negligent and/or wanton training, supervision and retention against Defendants the State of Alabama and DOT (Count V).

For reasons to be discussed, the Motions to Dismiss are due to be GRANTED.

## II. *MOTION TO DISMISS STANDARD*

■ A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

## III. *FACTS*

The allegations of the Plaintiff's Amended Complaint are as follows:

Mary Golthy ("the Plaintiff") is the widow of Freddie Golthy, Jr. Freddie Golthy, Jr. was a named plaintiff in the case of *Reynolds v. State of Alabama,* which is a race discrimination case against the State of Alabama pending before another judge in the United States District Court for the Middle District of Alabama. Freddie Golthy, Jr. was murdered by Graves on July 17, 2001, while on the premises of the DOT's Grove Hill, Alabama facility. Graves was convicted of Freddie Golthy, Jr.'s murder on April 26, 2002.

The Plaintiff alleges that the State of Alabama and the DOT were on notice of racial harassment and threats of physical harm to Freddie Golthy, Jr. The Plaintiff specifically alleges that Jim Ippolito ("Ippolito"), General Counsel for the DOT, had knowledge, by way of a telephone conference, of threats made by Graves to African Americans in retaliation for their complaints about Daniel Graves, Graves's son, displaying a confederate flag on his state issued cellular telephone. The Plaintiff has asserted claims in this case in her capacity as Administratrix of Freddie Golthy Jr.'s estate.

## IV. *DISCUSSION*

### A. State Defendants

The State Defendants move for dismissal on the grounds that they are entitled to sovereign immunity, that the Plaintiff's claims abated upon the death of Freddie Golthy, Jr., and that the Plaintiff lacks standing to seek prospective injunctive relief.

■ As the Plaintiff concedes, the State Defendants sued in their official capacities are not persons under § 1983 and, therefore, cannot be sued for money damages. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).[1] Also, Eleventh Amendment immunity bars claims against the State and its entities under § 1983, *Quern v. Jordan,* 440 U.S. 332, 342, 99

---

1. The Plaintiff does not respond to the State Defendants' contention that § 1981 claims are merged into § 1983 claims. *See Moore v.* *State of Alabama,* 989 F.Supp. 1412, 1420–21 (M.D.Ala.1997), *aff'd,* 178 F.3d 1303 (11th Cir.1999).

S.Ct. 1139, 59 L.Ed.2d 358 (1979), and § 1981. *See Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1069 (5th Cir. Unit A 1981). Accordingly, the State Defendants' Motion to Dismiss is due to be GRANTED as to the federal claims for money damages.

 With regard to the state law claims against the State Defendants, the State Defendants argue that the Eleventh Amendment bars such claims for money damages as the State has not waived its immunity from suit. Where the relief sought affects the state or where the state is, in effect, the party sued, as in a suit against a state official in his official capacity, the Eleventh Amendment bars any supplemental state claims. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In addition, Article I, § 14 of the 1901 Alabama Constitution bars suit under state law brought in federal court. *See Godby v. Montgomery Co. Bd. of Educ.,* 996 F.Supp. 1390, 1414 (M.D.Ala.1998). The State of Alabama, the DOT, and the Individual Defendants, to the extent the Plaintiff has sued them in their official capacities, therefore, are immune from the state law claims for damages.

 The Plaintiff appears to concede this point, arguing only that she is entitled to prospective injunctive relief as against the individual State Defendants in their official capacities. The State Defendants argue in response that prospective injunctive relief cannot be sought against individual Defendants in their official capacities for violation of either state or federal law in this case because an administratrix does not have standing to seek prospective injunctive relief. In support of their contention, the State Defendants cite to a decision by the Alabama Supreme Court which held that the administratrix of an estate does not have standing to seek injunctive relief because she could not demonstrate that she, as administratrix, or the estate,

will suffer immediate harm if the requested relief is not granted. *Ex parte Alabama Dept. of Mental Health and Retardation,* 837 So.2d 808, 811 (Ala.2002).

The Plaintiff cites the court to *Jones v. CSX Transp.,* 337 F.3d 1316 (11th Cir. 2003) (per curiam) for the proposition that an alleged fear can give a plaintiff standing under federal law if the fear is genuine and serious. The Plaintiff argues that Mary Golthy may be a target of racial violence. The Plaintiff in this case, however, is Mary Golthy serving as the Administratrix of her husband's estate. Mary Golthy is not herself a plaintiff. Whether the interest alleged would be sufficient to establish standing on the part of Mary Golthy is not an issue before this court. As there is no real or immediate threat that the estate of Freddie Golthy, Jr. will be the target of racial violence, the court concludes that the federal and state claims for prospective injunctive relief against the State Defendants are due to be DISMISSED for lack of standing. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (requiring a real and immediate threat for standing for prospective injunctive relief).

### B. Individual Defendants

The grounds for dismissal asserted by the Individual Defendants are that they are entitled to qualified immunity, that the federal and state law claims asserted against them abated at the death of Freddie Golthy, Jr., and that the tort of outrage is not actionable in the wrongful death context.

### Qualified Immunity

 Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir.1991). It applies to the assertion of constitutional claims, and to claims brought under § 1981 against state

actors. *See Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1300 n. 35 (11th Cir.1998) (reaffirming holding in *Johnson v. City of Fort Lauderdale,* 126 F.3d 1372, 1379–80 (11th Cir.1997) that qualified-immunity defense applied to § 1981 claim). As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). Apparently, there is no dispute that the Individual Defendants in this case were acting within their discretionary authority.

Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler* 323 F.3d 872, 878 (11th Cir.2003).

 Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope*

*v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Officials can be on notice that their conduct violates established law even in novel factual circumstances, although in some cases, a very high degree of prior factual particularity may be necessary, such as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue. *Id.*

 In this case, there is no allegation that the Individual Defendants actually participated in the fatal assault on Freddie Golthy, Jr. For a supervisor "to be liable under § 1983, [his or] her liability must be based on something more than the theory of respondeat superior." *Braddy v. Florida Dep't of Labor and Employment Security,* 133 F.3d 797, 801 (11th Cir.1998). The theory in this case, however, is not that these individuals should be held liable as supervisors of Graves, because he was no longer an employee of the DOT. *See* Amended Complaint at page 6 (identifying Graves as a former employee of the DOT). Instead, the theory is that these individuals failed to protect Freddie Golthy, Jr., their employee, from Graves while the two individuals were on DOT property.[2]

In the Amended Complaint, the Plaintiff refers to Exhibit A, an order from the *Reynolds* case. No such exhibit is appended to the Amended Complaint, or the original Complaint. The Plaintiff has, however, included within her allegations the purported language from that order upon which she relies so, in the context of the Motion to Dismiss, the court will rely on her allegation regarding the referenced order. The Plaintiff states that the Defen-

---

**2.** To the extent that the Plaintiff's claim is based on the allegation that the *Reynolds* consent decree has been violated, it is due to be dismissed, as that allegation should have been brought as a contempt motion in the *Reynolds* case.

Although the Plaintiff has pled separate counts for violations of Equal Protection and § 1981 and § 1981(a), in response to the Motions to Dismiss, she has not advanced a different theory of liability for those counts.

dants had been enjoined because there was a failure of enforcement of the anti-harassment policy, due in part to inadequate dissemination of the policy to the rank and file that the DOT had zero tolerance for racial harassment. Amended Complaint at page 2. The Plaintiff goes on to allege that the Defendants had knowledge of Graves's threats, but failed to take any action to protect Freddie Golthy, Jr., or any other employees or *Reynolds* class member, from racially motivated physical assault. *Id.*

The Individual Defendants have argued that they had no duty to protect Freddie Golthy Jr. from third-person violence. They cite authority for the proposition that a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause. *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). They also cite to other decisions for the proposition that the government does not have a duty to protect citizens from random acts of violence, but the facts as alleged in this case are not that a State failed to protect the public at large, but that an employer failed to protect its employee on the premises of the employer from violence of which it had notice. The Supreme Court and the Eleventh Circuit, however, have rejected the argument under a substantive due process theory that a constitutional duty to protect can be premised on the mere fact that there is an employment relationship. *See Collins v. City of Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *White v. Lemacks,* 183 F.3d 1253, 1259 (11th Cir.1999)("While deliberate indifference to the safety of government employees in the workplace may constitute a tort under state law, it does not rise to the level of a substantive due process violation under the federal constitution."). While those cases are distinguishable from this one in that the claim in this

case is for violation of equal protection, there is no allegation that the State selectively denied protective services on the basis of race. *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). The Plaintiff's theory is instead that the Individual Defendants refused to address racial harassment, were motivated by racial animus, and took no action to protect African–American employees. The court has been pointed to no, and is not aware of any, cases which stand for the proposition that either equal protection or § 1981 impose a duty in the employment relationship to protect from threats of violence by third parties.

■ Although not raised by the Plaintiff, there is precedent, in the Title VII context, for liability for harassment based on the actions of third parties. In *Watson v. Blue Circle, Inc.,* 324 F.3d 1252, 1258 n. 2 (11th Cir.2003), the Eleventh Circuit noted that an employer may be found liable for the harassing conduct of its customers if the employer fails to take immediate and appropriate corrective action in response to a hostile work environment of which the employer knew or reasonably should have known. *See also Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1365 (11th Cir.1999)(stating that an employer has the responsibility to address sexual harassment whether the "harasser is a supervisor, a co-worker, a client, or a subordinate."). The Plaintiff in this case is not asserting, however, that the Individual Defendants violated Freddie Golthy Jr.'s rights because they allowed for the creation of a racially hostile environment which impacted the terms and conditions of his employment. Instead, they are asserting that the Individual Defendants violated Freddie Golthy Jr.'s rights because they did not prevent a racially-based assault. Under *DeShaney* and *White,* such

conduct by the Individual Defendants does not violate the constitution.

Even assuming that sufficient facts have been alleged to state a claim for a violation of equal protection, the Individual Defendants would still be entitled to qualified immunity. Although the Plaintiff argues that a plaintiff no longer need point to a factually similar case to establish that a defendant is not entitled to qualified immunity and argues that the Individual Defendants were given fair warning that the federal right to be free from racial violence was clearly established, the Plaintiff does not cite to any cases which address the contours of such a right. *See* Plaintiff's Response at page 6. In fact, in the case cited by the Plaintiff to support the contention that there is an equal protection violation in this case, the court concluded that "[a]lthough intentional race- and gender-based discrimination is unlawful, none of the cases set forth by the plaintiffs fairly and clearly put [the defendant] on notice that the decision at issue in this case was unlawful." *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1273 (11th Cir.2003).

In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir.2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive fair warning that their conduct violates clearly established law. First, the words of a federal statute or constitutional provision may be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, *even in the total absence of case law.*" *Id.* at 1350 (emphasis in original). The Eleventh Circuit considers a case falling into this category an "obvious clarity case." *Id.* at 1350.

Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statute on its face, the court must turn its attention to case law that espouses "broad statements of principle ... that are not tied to particularized facts." *Id.* at 1351. In these types of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual situation. *Id.*

Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case. *Id.* With these cases, courts must examine case law stating that "Y Conduct" is unconstitutional in "Z circumstances." [3] *Id.* If the circumstances facing the official are "materially similar" to those of the fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted. *Id.* at 1352.

Given *DeShaney* and its progeny, which establish that there is no duty to protect the public from assaults by third parties, and cases such as *White*, in which this rule was applied to employers, the court must conclude that this case falls within the third category of "fair warning" analysis described above and even if the Individual Defendants violated the constitution, they were not given fair warning that their conduct was violative of the constitution.

Further, the Title VII precedent governing harassment by third parties which creates a hostile work environment would not have given the Individual Defendants fair warning that their failure to prevent a physical attack by a non-employee violated Freddie Golthy Jr.'s constitutional rights. *See Snider v. Jefferson State Community College*, 344 F.3d 1325, 1330 (11th Cir.

---

**3.** The Eleventh Circuit noted that most case law will fall into this third category. *Vinyard,* 311 F.3d at 1351–52.

2003) (holding that although same sex sexual harassment was known to be cognizable under Title VII at the time of the events in question, because it had not been ruled unconstitutional at that time, qualified immunity was appropriate).[4] Consequently, even if there were a constitutional violation for intent to discriminate by an employer in failing to respond to threats of violence from a non-employee, the Individual Defendants would be entitled to qualified immunity because they did not have fair warning that the failure to respond to this type of harassment was a constitutional violation.[5]

### Abatement

The Individual Defendants also argue that the Plaintiff's § 1983, § 1981, and state law outrage claims are due to be dismissed as they did not survive Freddie Golthy, Jr.'s death.

With respect to the abatement argument, the Plaintiff's only response appears to be with respect to the application of abatement in the § 1983 context. The Plaintiff does not argue directly that the state law claim did not abate at Freddie Golthy Jr.'s death. The Plaintiff does, however, respond to the Individual Defendants' argument that she has not stated a cognizable claim of outrageous conduct. The Plaintiff argues that Mary Golthy suffered the ultimate emotional distress in the anguish and grief that she experienced at her husband's death.

 Mary Golthy is only a Plaintiff in this case in her capacity as the Administratrix of Freddie Golthy, Jr.'s estate. Therefore, the outrageous conduct claim asserted in this case is the claim of Freddie Golthy, Jr.'s estate. The court has been pointed to no authority which would establish that that claim did not abate at the death of Freddie Golthy, Jr. To the contrary, the Alabama Supreme Court has held that unfiled tort claims of the decedent do not survive his death. *See Georgia Casualty & Surety Company v. White*, 582 So.2d 487, 491 (Ala.1991). Therefore, the court must conclude that the state law claim brought against the Individual Defendants abated at Freddie Golthy Jr.'s death.[6]

## V. CONCLUSION

For the reasons discussed, the court concludes that the Motions to Dismiss are due to be GRANTED. A separate Order will be entered in accordance with this Memorandum Opinion.

## ORDER

In accordance with the Memorandum Opinion entered in this case on this date, it is hereby ORDERED as follows:

1. The Motion to Dismiss (Doc. # 35) filed by Defendants State of Alabama; State of Alabama Department of Transportation; Bob Riley, Governor of the State of Alabama in his official capacity; Bill Pryor, Attorney General of the State of Alabama, in his official capacity; Jim R. Ippolito, in his official capacity; Jerry Holt, in his official capacity; and Paul Bowlin, in his official capacity is GRANTED.

---

4. The panel was split, with the opinion being written by Chief Judge Edmondson and Judge Barkett concurring in part and dissenting in part. *See Snider*, at 1326, 1330.

5. The same qualified immunity analysis would also apply to the § 1983 claim for violation of § 1981 as the Plaintiff has not argued that there is any distinction in the legal theories of the equal protection and § 1981 claims.

6. As the federal claims are due to be dismissed on other grounds, the court need not address the applicability of abatement to the § 1983 constitutional and statutory claims.

2. The Motion to Dismiss (Doc. # 36) filed by Defendants Jim R. Ippolito, in his individual capacity; Jerry Holt, in his individual capacity; and Paul Bowlin, in his individual capacity is GRANTED.

The case will proceed on the Plaintiff's claims against Marvin Rowlin Graves.