[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 26, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11238
Non-Argument Calendar

_____

D. C. Docket No. 07-00831-CV-JOF-1

CYNTHIA HALL,

Plaintiff-Appellant,

versus

MYRON E. FREEMAN,
CHELISA LEE,
JEROME DOWDELL,
TWANTTA CLERK-MATHIS,
GARY REID,
PAUL TAMER,
ALPHONSO WRIGHT, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 26, 2008)

Before CARNES, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Cynthia Hall, a courtroom deputy employed by the Sheriff of Fulton County, appeals the dismissal of her complaint that the Sheriff and his employees violated her due process rights by failing to provide a safe work environment. See 42 U.S.C. § 1983. The district court dismissed Hall's complaint for failure to state a claim. We affirm.

## I. BACKGROUND

Brian Nichols was incarcerated at the Fulton County Jail after his arrest for rape, false imprisonment, aggravated assault, and burglary. On the day of Nichols's retrial, Cynthia Hall entered the eighth floor holding cell to secure Nichols and escort him to the courtroom. Nichols disarmed and brutally beat Hall. Nichols fractured Hall's skull and inflicted severe and permanent brain damage. An investigation of the incident revealed that there was a lapse in courthouse security at the time of the attack.

Hall filed a complaint in a Georgia court against Myron Freeman, Fulton County Sheriff; Chelisa Lee, Captain of Court Services; Jerome Dowdell, Sergeant in the Training Division; Twantta Clerk-Mathis, Assistant Watch Commander of the Fulton County Jail; Gary Reid, Lieutenant in Court Services; Paul Tamer,

Deputy Sheriff III in Court Services; Alphonso Wright, Civilian-Security Specialist; and Lucious Johnson, Major in the Jail Division. Hall alleged that the defendants, acting in their individual and official capacities, violated her civil rights under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the U.S. Constitution, 42 U.S.C. § 1983, and Georgia law. Hall contended that the defendants were aware that Nichols posed a threat and failed to comply with security procedures, which caused her seizure and brutal beating. Hall also alleged that policymakers were deliberately indifferent to lapses in security.

Hall's complaint alleged that, several months before Nichols's trial, Nichols's mother and pastor told Sergeant Jerome Dowdell that Nichols planned to disarm a deputy and escape. Sergeant Dowdell told a detention officer and deputy that Nichols might "act out" if convicted. Dowdell "intentionally and negligently" withheld the information when questioned by a fellow sergeant, "negligently" failed to document or advise superiors about the threat, and did not question Nichols about the threat. A deputy learned about the threat about a month before trial and gave the information to court services officers, including Captain Chelisa Lee, during roll call.

Hall's complaint alleged that, two days before trial, a deputy sheriff confiscated metal shanks that he discovered in Nichols's shoes. Assistant Watch

3

Commander Twantta Clerk-Mathis placed the written report about the incident in the watch commander's log book and left the shanks unsecured at the public lobby front desk. Clerk-Mathis failed to notify a supervisor or take any additional security precautions and was later fired for her conduct.

Hall's complaint alleged that, the day before Nichols's trial, Major Lucious Johnson saw the entry about Nichols in the log book. Johnson was unaware of Nichols's threat to disarm a deputy and escape. Johnson did not investigate the origin of the shanks or discipline Nichols.

Hall's complaint alleged that, the day of Nichols's trial, Lieutenant Gary Reid was responsible for security on the eighth floor of the courthouse. Reid called in sick and did not attempt to schedule an officer to replace him even though he had received a copy of the incident report and knew of Nichols's plan to escape.

Hall's complaint alleged that Captain Lee had also received a copy of the incident report, but failed to investigate the situation, examine the shanks, or notify the jail division of the threat made by Nichols. The captain was required to staff the closed circuit surveillance system for the courthouse and failed to schedule a replacement for Reid. Captain Lee failed to comply with a department policy to maintain two security personnel in the control room and sent surveillance officer Alphonso Wright to get her breakfast. Captain Lee was terminated for her

4

conduct.

Hall's complaint alleged that the remaining surveillance agent, Paul Tamer, left central control unmanned to respond to a security call. Although department policy required that two officers remain in central control to watch the monitors for possible distress alarms and observe real-time video feeds in the courthouse, officers Wright and Tamer failed to secure replacement officers before leaving their posts. Wright and Tamer also failed to redirect cameras to observe holding cells. These actions allowed Nichols to attack Hall without being noticed.

Hall's complaint alleged that Fulton County Sheriff Myron Freeman was absent from the courthouse on the day of Nichols's trial and failed to supervise his officers inside and on the courthouse grounds. The Sheriff failed to establish policies to regulate absenteeism and replace absent employees or establish minimum staffing standards for the courthouse. The Sheriff also failed to enact a plan to facilitate communication between the jail and central control.

The defendants moved to dismiss or for judgment on the pleadings, and the district court granted the motions. The district court concluded that Hall was not "in custody" and the defendants were not deliberately indifferent to Hall's safety. In the alternative, the court held that the defendants were entitled to qualified immunity. The district court declined to exercise supplemental jurisdiction over

5

Hall's complaint of negligence under state law.

## II. STANDARDS OF REVIEW

We review <u>de novo</u> both the dismissal of a complaint for failure to state a claim on which relief can be granted and a judgment on the pleadings. <u>Hardy v. Regions Mortgage, Inc.</u>, 449 F.3d 1357, 1359 (11th Cir. 2006); <u>White v. Lemacks</u>, 183 F.3d 1253, 1255 (11th Cir. 1999). We accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. <u>Id.</u>

## III. DISCUSSION

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." Under the substantive guarantee of the Clause, an official has a duty to protect those in his custody against harm by third parties. <u>See</u> <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 127–28, 112 S. Ct. 1061, 1069–70 (1992). If there is no custodial relationship, an official is liable under the substantive due process clause only if the official engages in conduct that is "arbitrary or conscience shocking in a constitutional sense[,]" or amounts to deliberate indifference. <u>White</u>, 183 F.3d at 1259.

Hall alleges that officials violated her substantive due process rights by failing to comply with security procedures that would have prevented Nichols's

6

attack. She alleges that she was entitled to protection because she was in a custodial relationship with the officials. In the alternative, Hall alleges that the officials were liable because their acts and omissions were arbitrary and evinced a deliberate indifference to her safety. Hall's arguments fail.

Hall was not in the custody of the officials. Custody involves a deprivation of liberty and the corresponding inability to care for or protect oneself. White, 183 F.3d at 1257; DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 200, 109 S. Ct. 998, 1005 (1989) (custody involves a "restraint of personal liberty"). Hall acknowledges that both the Supreme Court of the United States and a prior panel of this Court have rejected the argument that an employee is entitled to custodial protection when he serves the government and faces termination upon a refusal to submit to unsafe job conditions. See Collins, 503 U.S. at 126–28, 112 S. Ct. at 1069 (the Due Process Clause does not guarantee a sewer worker a safe working environment); White, 183 F.3d at 1257. That Hall was exposed to danger as a natural by-product of her employment did "not convert [her] voluntary employment relationship into a custodial relationship" and "entitle [her] to constitutional protection from workplace hazards, one of which can be harm caused by third parties." White, 183 F.3d at 1257.

Hall's argument that her due process rights were violated also fails for

another reason. Hall's complaint does not describe acts and omissions so egregious that they "shock the conscience," or amount to indifference to an "excessive . . . risk to [Hall's] health or safety." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305–06 (11th Cir. 2003). Hall does not allege that the officials' acts and omissions were intentional; Hall's complaint instead describes negligence. The officials' breaches of protocol are not "conscience shocking in a constitutional sense," White, 183 F.3d at 1258, and do not establish deliberate indifference for Hall's safety.

## IV. CONCLUSION

The dismissal of Hall's complaint is **AFFIRMED**.