**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 18 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

———————————————————

JESSICA N. MARTINEZ,
Individually and as the
natural mother and next friend
of DESEREE MARTINEZ, ALEESHA
MARTINEZ and CHRISTOPHER
MARTINEZ, minor children; et
al.,

    Plaintiffs-Appellants,

v.

JUDITH UPHOFF, Director of
Department of Corrections; et
al.,

    Defendants-Appellees.

No. 00-8034

———————————————————

Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 99-CV-131-J)

———————————————————

Terry W. Mackey, Hickey, Mackey, Evans & Walker, Cheyenne,
Wyoming, (Roger Fransen, Hickey, Mackey, Evans & Walker,
Cheyenne, Wyoming and Jason M. Tangeman, Anthony, Nichols &
Sharpe, LLC, Laramie, Wyoming, were with him on the briefs) for
Plaintiffs-Appellants.

Richard Rideout, Law Offices of Richard Rideout, PC, Cheyenne,
Wyoming, for Defendants-Appellees.

———————————————————

Before **SEYMOUR** and **BRORBY**, Circuit Judges, and **BROWN**, Senior
District Judge.[*]

———————————————————

**BROWN**, Senior District Judge.

———————————————————

[*] Honorable Wesley E. Brown, Senior United States District
Judge for the District of Kansas, sitting by designation.

Plaintiff-appellants, pursuant to the provisions of 28 U.S.C. 1983 and 1988, appealed the district court's entry of summary judgment in favor of the defendants. The court exercises appellate jurisdiction under the provisions of 28 U.S.C. §1291.

Corporal Martinez was a Wyoming Department of Corrections Officer at the Wyoming State Penitentiary in Rawlings, Wyoming. While on duty in the "Shift Command Office" of the Maximum Security Unit at the prison, he was attacked and murdered by three inmates who were attempting to escape.

All defendants are sued in their individual capacities. Each was an employee of the Department of Corrections at the time of Martinez's death.[1] Plaintiffs have brought this action under the provisions of 28 U.S.C. §§1983, 1988 upon the theory that defendants' conduct deprived Martinez of substantive due process, a guarantee that persons will not be deprived of life, liberty or property through arbitrary and capricious state action. In this case, plaintiffs alleged that defendants deliberately failed to ensure proper training and supervision of penitentiary personnel, failed to provide safe and adequate staffing, and failed to take corrective action to protect Martinez. More particularly, plaintiffs claimed that the prison officials knew or should have known that an escape was planned by inmates, that they knew of

_____

[1] Judith Uphoff was the Director of the Department of Corrections, Robert Ortega was the Deputy Director and Prison Administrator, James Ferguson was the Warden, William Hettgar was the Deputy Warden, and Kenneth Kinney was the Associate Warden of Security.

the violent tendencies of two of the three inmate involved in the murder, and that they had knowledge that the overcrowding and low staffing in the "Maximum Unit" where Martinez met his death, created dangerous working conditions, which the defendants failed to modify. In this respect, plaintiffs relied on a series of cases which have recognized potential liability for state actors under the "danger creation theory."

The district court sustained defendants' motion for summary judgment, ruling that plaintiffs' allegations failed to state a claim under §1983 under a "danger-creation" theory. The district court further determined that all defendants were entitled to the defense of qualified immunity. In this appeal, plaintiffs claim that the grant of summary judgment was erroneous because there are disputed factual issues concerning the extent of defendants' knowledge of the dangerous situation which led to Martinez's death.

We review the district court's grant of summary judgment by applying the standards set out under Rule 56(c) Fed. R. Civ. Proc. We must first determine if there is a genuine issue of material fact in dispute, and, if not, then we determine if the trial court correctly applied substantive law. Uhlrig v. Harder, 64 F. 3d 567, 571 (10th Cir. 1995), cert. den. 516 U.S. 1118, 133 L.Ed. 853.

After a review of the record, we find that the trial court's order granting defendants' motion for summary judgment should be affirmed.

3

In affirming the grant of summary judgment, we will be guided by the principles discussed in Uhlrig v. Harder, supra 64 F.3d 567, and Liebson v. New Mexico Corrections Dept., 73 F.3d 274 (10th Cir. 1996). In both cases, we ruled that defendants were entitled to entry of summary judgment.

In Uhlrig, the plaintiff was the executor of the estate of his wife, Stephanie Uhlrig, an employee of a state mental hospital. Mrs. Uhlrig was murdered by an inmate confined in the institution. The action was brought under the provisions of 42 U.S.C. §1983 against administrators of the hospital who had terminated a special unit in the institution reserved for the criminally insane. Plaintiff claimed that defendants' reckless decision to terminate the special unit led to the placement of the inmate who murdered Mrs. Uhlrig in the general hospital population where the deceased worked as an activity therapist. In this respect, plaintiff claimed that defendants were liable under §1983 for violating the employee's right to substantive due process by recklessly creating the danger that led to her death.

In Liebson, plaintiff was employed as a librarian in a community college, and under a contract; she was assigned to provide library services to inmates housed in the maximum security unit of the New Mexico State Penitentiary. A prison guard was present in the library at all times that plaintiff was on duty until March 21, 1992, when the prison administrators changed library hours and the schedule of the library guard. A few days later, plaintiff was on duty without a guard when she

4

was kidnapped, held hostage, and sexually assaulted by an inmate library assistant.

"While state actors are generally liable under the Due Process Clause only for their own acts and not for private violence, DeShaney v. Winnebago Soc. Servs., 489 U.S. 189, 196–97, 117 L.Ed. 2nd 249 (1989)[2], . . . there are two recognized ... exceptions to this rule: (1) the special relationship doctrine; and (2) the 'danger' creation theory." Uhlrig, supra, 64 F.3d at 572.[3]

In this case, the defendants can be liable only for acts which created the danger that harmed Corporal Martinez. These acts must go beyond mere negligence, since the evidence must establish that defendants recklessly created the danger that led to Martinez's death, or that they acted in a "conscience shocking" manner which caused a constitutional violation under 42 U.S.C.A. §1983. In Uhlrig, this court discussed the type of

---

[2] In DeShaney, state department of social services failed to remove child from father's custody although there was adequate evidence child was abused. The Supreme Court held there was no duty under §1983 when child was not in defendants' custody.

[3] The special relationship doctrine will apply only when the state assumes such control over an individual that an affirmative duty is undertaken to protect that person from danger. Examples of such control include a person who is a prisoner, or is involuntarily committed to a mental institution. Uhlrig, supra, 64 F. 2d at 572.
    The trial court here correctly found that there was no special relationship in the case of Martinez since he was an employee of the state, a relationship which was consensual in nature. See discussion, infra.

5

evidence which is needed to establish a recovery under the danger creation theory:

> . . . many state activities have the potential for creating some danger – as is true of most human endeavors – but not all such activities constitute a "special" danger giving rise to §1983 liability. For the state to be liable under §1983 for creating a special danger. . . a plaintiff must allege a constitutionally cognizable danger. That is, the danger creation theory must ultimately rest on the specifics of a substantive due process claim – i.e. a claim predicated on reckless or intentional injury causing state action which "shocks the conscience." (64 F.2d at 572)

We further emphasized that the "shock the conscience" standard "requires a high level of outrageousness. . . . (since) a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist in the workplace is not necessarily conscience shocking." (Uhlrig, 64 Fed. 3d at 574, quoting Collins v. City of Harker Heights Tex., 503 U.S. 115, 128; 117 L.Ed. 2d 261 (1992)(No remedy under §1983 for employee's death.)

In this case, plaintiffs claimed that the defendants deliberately failed to ensure proper training and supervision of its personnel, deliberately failed to provide safe and adequate staffing, and deliberately failed to take corrective action to protect Martinez's constitutional rights. Plaintiffs claim that defendants knew or should have known that an escape attempt was planned, and that defendants knew Martinez would be placed in a life-threatening situation when he was assigned to the Maximum

6

Security Unit. It is also suggested that defendants knew of the violent tendencies of two of the inmates involved in the murder, but failed to take appropriate precautions to protect Corporal Martinez.[4]

In a lengthy memorandum and order, the trial court fairly stated the facts giving rise to this action, and thoroughly reviewed the applicable law pertaining to defendants' alleged liability. Plaintiffs submitted numerous exhibits relating to alleged deficiencies at the state prison, including overcrowding, defendants' alleged failure to properly train and to supervise its employees in safety measures, excessive turnover in employees and inadequate staffing.

In its ruling, the district court found that it was "not entirely clear. . . how the inmates who murdered Corporal Martinez obtained access to the Shift Command Office in which he was working." (Aplt. App. B-1, p. 20). While the official policy at the prison was that the Shift Command Office door should be kept locked at all times, it appears that this rule was not always followed because items issued to inmates were kept in the office. The trial court found that "(t)he materials before the Court do not shed much light on what happened on June 26, 1997

_____

[4] Plaintiffs suggest that prison records indicated that one inmate was not in segregation although he had a history of discipline problems, had tested positive for drugs the week before, and contraband had been found in his cell. Another inmate had a known history of mental problems and had tested positive for drugs, while the third inmate was not in segregation although he had been identified as dangerous and assaultive.

7

when Corporal Martinez was attacked and murdered and leave open to speculation why Corporal Martinez allowed the door to the Shift Command Office to remain open and unlocked so as to allow the inmates to gain entry to that office." (Ibid at p. 21).

After reviewing all of the evidence submitted by the parties on the motion for summary judgment, the trial court determined that plaintiffs had failed to state a claim.  In so doing, the court viewed the evidence in this manner:

> The plaintiffs' claims regarding the created danger are essentially threefold:  the prison was overcrowded, understaffed, and training for prison employees was not adequate.  While the Court does not intend to suggest that these concerns are not of tremendous significance to employees. . . as well as the general public, they are not such that they come within the established contours of the law regarding the danger creation theory and are not of such a magnitude that the Court is able to conclude they shock the conscience,....
>
>                 * * * *
>
> ... the level of culpability of the defendants in this case must be analyzed against the backdrop of causation.  The defendants are not alleged to have harmed Corporal Martinez or have caused his death.  The claims against the state actors in this case are a number of steps in the causative chain removed from Corporal Martinez' tragic death at the hands of inmates Dowdell, Collins and Harlow.  Corporal Martinez knew the prison was a dangerous environment within which to work.  He had the choice of being employed as a guard at the WSP or not being so employed.
> (Aplt. App. B, pp. 43-44)

As pointed out by the district court, the plaintiff failed to provide facts which would tie the institutional deficiencies

8

at the prison to the death of Corporal Martinez. There was no evidence that he or any other guard was not aware of "the mental states or violent propensities" of inmates confined in the Maximum Security Unit. There was no evidence that the confiscation of weapons or contraband, or the presence of drugs within the prison were specifically related to the death of Martinez.[5] We agree with the conclusion of the trial court that, under the circumstances of this case, "inaction in the face of known dangers or risks [was] not enough to satisfy the danger-creation theory's conscience shocking standard." (<u>Ibid</u>. at p. 45)

We have considered plaintiffs reliance on <u>Sutton v. Utah State School for the Deaf and Blind</u>, 173 F. 3d 1226 (10th Cir. 1999) and agree with the trial court's conclusion that it is clearly distinguishable from the situation involving the Wyoming State Penitentiary. That case involved sexual molestation of a minor child who suffered from cerebral palsy, mental retardation, total blindness and inability to speak. The school superintendent, the principal, and the child's teacher had been previously informed of a prior attack on the child. These defendants assured the mother that this could not happen. The <u>Sutton</u> case involved a "special relationship" situation, an

---

[5] As the lower court noted, the fact that inmates were tested for drugs and that weapons had been confiscated through regular searches tended to prove that prison officials demonstrated "an affirmative step .... intended to eliminate or reduce risks to WSP staff and guards...." (<u>Ibid</u> at p. 44).

exception to the general rule that a state will not be liable for the actions of private parties.  Corporation Martinez's situation was not in any way similar to that of the child in <u>Sutton.</u>

Since plaintiffs failed to state a claim for denial of substantive due process under the danger creation theory, we further agree with the conclusion of the district court that defendants are entitled to the defense of qualified immunity.

Accordingly, the district court's grant of summary judgment in favor of defendants in AFFIRMED.