Robert **GRIFFIN**, et al., Plaintiffs,

v.

**TROY STATE UNIVERSITY,**
**et al., Defendants.**

**No. CIV.A. 2:03CV916–A.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 25, 2004.

■

James Victor Doyle, Jr., K. Stephen Jackson PC, Joseph Luther Tucker, K. Stephen Jackson PC, K. Stephen Jackson, K. Stephen Jackson PC, Birmingham, AL, for Robert Griffin, Individually and next friend and Administrator of the Estate of Brandy Hobson, deceased, Annette Griffin, Individually and next friend and Administrator of the Estate of Brandy Hobson, deceased, Plaintiffs.

Allison Lynn Alford, Ball Ball Matthews & Novak PA, C. Winston Sheehan, Jr., Ball Ball Matthews & Novak PA, Montgomery, AL, William F. Gardner, Cabaniss Johnston Gardner Dumas O'Neal, Birmingham, AL, for Don Siegelman, individually, Edward R. Richardson, individually, Douglas Hawkins, individually, Gerald O. Dial, individually, Allen Tucker, individually, John D. Harrison, individually, Allen E. Owen, III., individually, Milton McGregor, individually, James R. Andrews, individually, Roy Henry Drinkard, individually, Lamar Higgins, individually, Richard Scrushy, individually, Jack Hawkins, Jr., individually, Rod Anderson, individually, Defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Senior District Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Dismiss (Doc. # 24) filed by Defendants Jack Hawkins, Jr., James Andrews, Gerald Dial, Roy Drinkard, John Harrison, Douglas Hawkins, Lamar Higgins, Milton McGregor, and Allen Owen, Chancellor and Trustees of Troy State University, and Rod Anderson, Chief of Police of Troy State University ("Defendants"), in their individual capacities. Defendant Edward R. Richardson, Trustee of Troy State University, has also filed a Motion to Dismiss the claims against him in his individual capacity (Doc. # 27). Edward Richardson requests that the court permit him to adopt the above Defendants' Motion to Dismiss and supporting brief. The court grants Richardson's request and will address the Defendants' Motion to Dismiss as if Richardson had joined in the motion.

The Plaintiffs, Robert Griffin and Annette Griffin ("Griffins"), suing both individually and as Next Friends and Administrators of the Estate of Brandy Hobson, filed a Complaint on September 3, 2003 bringing one count under 42 U.S.C. § 1983 alleging a violation of their rights under the Fifth and Fourteenth Amendments to the United States Constitution. The claims against the Defendants in their official capacities have been dismissed by previous order (Doc. # 17). The Defendants now have moved to dismiss the Griffins' claims against them in their individual capacities.

For the reasons to be discussed, the Motions To Dismiss filed by the Defendants are due to be GRANTED.

### II. MOTION TO DISMISS STANDARD

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.")

(citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

## III. *FACTS*

The allegations of the Plaintiff's Complaint are as follows:

Brandy Hobson ("Hobson") died on September 3, 2001, when she was 17 years old. At the time of her death, Hobson was a student at Troy State University ("TSU") and a resident of Clements Hall on the Troy, Alabama campus of TSU. On September 3, 2001, Johnathan Antoine Rumph ("Rumph") entered Clements Hall without authorization and murdered Hobson in her dormitory room.

TSU mandates that all freshman students live in on-campus dormitory facilities. Hobson was a freshman at the time of her death and thus had to live in a TSU dormitory. TSU represented to its students that it provided adequate and sufficient security throughout its campus for those students required to reside in university housing. Clements Hall was not securely locked on the evening of September 2, 2001 through the morning of September 3, 2001. Rumph entered Clements Hall without any measure of reasonable security being enforced.

The Plaintiffs allege that the Defendants were deliberately indifferent to the grossly inadequate security measures in place at the TSU's Clements Hall. The Plaintiffs also allege that the Defendants

had knowledge or reasonably should have had knowledge of the dangerous conditions that existed on the TSU campus.[1] Further, the Plaintiffs allege that the Defendants "failed to provide adequate security for the dormitory residents, including the decedent, with which a special relationship existed, thereby evidencing a deliberate indifference to the decedent's danger in violation of the 5th and 14th Amendments to the United States Constitution." Pl.'s Compl. ¶ 60.

## IV. *DISCUSSION*

■ The Defendants assert the defense of qualified immunity as to the claims brought against them by the Griffins. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir.1991). It applies to the assertion of constitutional and federal statutory claims brought against state actors. *See Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1295 (11th Cir.1998). While qualified immunity is typically addressed at the summary judgment stage of a case, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." *St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir.2002) (quoting *Chesser v. Sparks,* 248 F.3d 1117, 1121 (11th Cir. 2001)). Once an officer raises the defense of qualified immunity, the plaintiff has the burden of proving that qualified immunity is not warranted. *See id.*

■ In order to decide whether a defendant is entitled to qualified immunity, as a preliminary matter, the court must first

---

1. The Plaintiffs do not allege what these dangerous conditions are other than a lack of security measures on campus. They do not allege that Rumph was a known danger to Hobson or that previous incidents had occurred in the dormitories involving intruders assaulting students.

determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988). In this case, neither party disputes that the Defendants were so acting. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002) (stating that in order to receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred") (internal quotation marks omitted).

■■■ Once it is established that a defendant was acting within his discretionary authority, the court must determine whether the facts alleged, taken in a light most favorable to the plaintiff, show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler* 323 F.3d 872, 878 (11th Cir.2003).

■■■ Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). In

other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Officials can be on notice that their conduct violates established law even in novel factual circumstances, although in some cases, a very high degree of prior factual particularity may be necessary, such as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue. *Id.*

Using the above analysis, the first step in analyzing the Plaintiffs' claim of a violation of their Fourteenth Amendment rights in light of the Defendants' defense of qualified immunity is for the court to inquire whether the Plaintiffs' allegations, if true, establish the alleged constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The court must look at the Plaintiffs' Complaint to see if the Plaintiffs have stated a constitutional violation.

The Griffins' Complaint stems from the assault and murder of Hobson in Clements Hall on the campus of TSU. The crux of the Griffins' complaint is that the Defendants violated both their Fourteenth Amendment right to substantive due process and Hobson's Fourteenth Amendment right to substantive due process due to a deliberate indifference to the safety of Hobson as a resident of Clements Hall.[2] Therefore, the question before the court is

**2.** The Griffins also allege a violation of both their and Hobson's Fifth Amendment rights. The Griffins, however, do not address the Defendants' arguments concerning qualified immunity as to their claims under the Fifth Amendment in their opposition to the Defendants' Motion to Dismiss. The Defendants assert that the Complaint's reliance on the Fifth Amendment is irrelevant, because it cannot provide a basis for liability due to the fact that the Fifth Amendment Due Process clause applies only to the federal government. The

court agrees that the Fifth Amendment Due Process clause applies only to the federal government. *See Sweatt v. Bailey*, 876 F.Supp. 1571, 1582–82 (M.D.Ala.1995) (*citing Bartkus v. State of Illinois*, 359 U.S. 121, 124, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959)). The Griffins have not alleged a constitutional violation against the federal government, thus the Fifth Amendment is inapplicable. Therefore, the Griffins cannot maintain a claim for violation of Fifth Amendment rights.

whether the allegations of the Complaint establish a violation of the Plaintiffs' and Hobson's substantive due process rights by the Defendants' deliberate indifference to Hobson's safety and well-being while she resided in Clements Hall.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Griffins contend that the Defendants deprived the Plaintiffs of their substantive due process right to liberty through the Defendants' deliberate indifference to the safety of Hobson and the other TSU dormitory residents. This deliberate indifference manifested itself in the murder of Hobson. The United States Supreme Court has been clear that the Fourteenth Amendment's Due Process Clause does not require the State to protect the life, liberty, and property of its citizens against invasion by private actors. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Thus, a state's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause. *Id.* at 197, 109 S.Ct. 998.

■ In the present case, the Griffins are asserting a claim under the Due Process Clause of the Fourteenth Amendment, which stems from the violence of a private individual. Thus, Defendants argue that under *DeShaney* such a claim does not exist, because the State's failure to protect Hobson's liberty does not consti-

tute a violation of the Due Process Clause. *DeShaney*, however, does leave room for Due Process violations where a special relationship exists between an individual and the State; that is where the State fails to care for a person's safety and general well-being after taking the person into its custody and holding him against his will. *Id.* at 199–200, 109 S.Ct. 998.[3]

The Griffins argue that the case at hand is such a situation, where Hobson had a constitutional right to protection against the violence of third parties. They base this argument on the special relationship and special danger doctrines set forth in *Cornelius v. Town of Highland Lake*, 880 F.2d 348 (11th Cir.1989). In *Cornelius*, the plaintiff, while working at the town hall, was abducted and subsequently terrorized for three days by inmates in the custody of the Alabama Department of Corrections who were working at the town hall for maintenance and public works purposes. The plaintiff brought a suit alleging a substantive due process violation. The Eleventh Circuit held that state and local entities could be held liable for substantive due process violations for their failure to protect individuals from the violence of third parties where the state had a "special relationship" with the individual or where the state, through affirmative acts, put the individual in "special danger" of harm. *Id.* at 352–355.

The Eleventh Circuit, however, retreated from this holding after the Supreme Court's holding in *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).[4] The *Collins*

---

3. These situations include involuntarily committed mental patients, *see Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) and prison inmates, *see Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See DeShaney*, 489 U.S. at 198–200, 109 S.Ct. 998.

4. The Plaintiffs argue that the Eleventh Circuit has questioned the validity of *Cornelius* on several occasions, but has not overruled *Cornelius*. The Plaintiffs, in listing these various cases, inexplicably fail to cite and address the later cases of *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir.1999), in which the Circuit expressly held that *Cornelius* was overruled by *Collins*, and *Waddell v. Hendry Coun-*

court rejected the notion that government employers have a federal constitutional obligation to provide its employees with certain minimal levels of safety and security in the workplace. In doing so, the *Collins* court emphasized that consensual employment relationships are different from custodial relationships. *Collins*, 503 U.S. at 128, 112 S.Ct. 1061. Thus, consensual employment relationships do not fall into the special relationship category discussed in *DeShaney*.

In *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir.1999), the Eleventh Circuit stated that after *Collins* it appears that the only relationships that automatically give rise to a governmental duty to protect individuals from harm by third parties under the substantive due process clause are custodial relationships, arising from involuntary confinement through which the government deprives individuals of their liberty. The fact that a government employee would risk losing his or her job if he or she did not submit to unsafe job conditions does not convert a voluntary employment relationship into a custodial relationship. *Id.* Thus, the Eleventh Circuit, in *White*, held that *Collins* overrules the part of *Cornelius* which holds that a government employment relationship is a "special relationship" giving rise to a constitutional duty to protect individuals from harm by third parties. *Id.* at 1257–58.

*White* also addressed the "special danger" doctrine outlined in *Cornelius*. The *White* court stated that the special relationship doctrine "was not the only part of *Cornelius* felled by *Collins*." *Id.* at 1258. The *White* court continued to say that the "'special danger' doctrine employed in *Cornelius* has been supplanted as well." *Id.* *White* overruled the special danger doctrine outlined in *Cornelius*. The *White* court declared *Cornelius* "dead and buried" and that "the law on substantive due process when a citizen who is not in custody claims that a governmental unit, agency, or official has caused her harm is supplied by the *Collins* decision, which occupies the field to the exclusion of anything we said about such cases in *Cornelius*." *Id.* at 1259, *see also Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir.2003) (stating that the special relationship and special danger doctrines were superceded by *Collins*). Therefore, as the special danger doctrine no longer exists in this circuit,[5] the Plaintiffs cannot maintain a claim for a violation of the Fourteenth Amendment Due Process Clause under that doctrine. Consequently, the Plaintiffs' Complaint does not state a constitutional violation based on the special danger doctrine.

Although the Complaint cannot rely on the special danger doctrine to state a constitutional violation, the court must take a closer look at the applicability of the special relationship doctrine to the present case. While *White* dictates that *Corneli-*

---

ty Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir.2003), in which the court cited *White* as holding that the doctrines of *Cornelius* had been superceded by *Collins*, both of which will be discussed. The court will assume that Plaintiffs' counsel was merely negligent in this regard, rather than intentionally failing to "recognize the existence of pertinent legal authorities," in violation of his duty of Candor Toward the Tribunal under Rule 3.3(a), *Alabama Rules of Professional Conduct*. "Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." Comment to Rule 3.3. Counsel is strongly advised, however, to scrupulously fulfill in the future his duty of candor to this court and any other court in which he practices.

5. The court acknowledges that other circuits still recognize the special danger doctrine. *See Martinez v. Uphoff*, 265 F.3d 1130, 1133 (10th Cir.2001), *Kneipp v. Tedder*, 95 F.3d 1199 (3rd Cir.1996), *Johnson v. Dallas Independent School District*, 38 F.3d 198 (5th Cir. 1994).

*us's* "special relationship" doctrine has been overruled by *Collins*, the *White* opinion was fairly narrow, in that it stated that after *Collins*, government employment relationships are not special relationships. The *White* opinion left open the possibility that special relationships may exist in contexts other than government employment relationships. *White* did not deal with relationships such as the one in the present case. The relationship in the present case was one between the state and a student at a state university. Therefore, the court will look to see whether Hobson and the Defendants were in a special relationship such that the relationship gave rise to a governmental duty to protect Hobson from harm by third parties under the Due Process clause.

In deciding this issue, the court acknowledges the Supreme Court's clearly expressed reluctance to expand the concept of substantive due process. *See Collins*, 503 U.S. at 125, 112 S.Ct. 1061. Additionally, the Supreme Court has made it clear that the purpose of the Due Process Clause of the Fourteenth Amendment is to protect the people from the state, not to confer any right to governmental aid. *DeShaney*, 489 U.S. at 196, 109 S.Ct. 998. Thus, the court will carefully consider whether the case at hand presents the rare situation where the concept of substantive due process should be expanded.

 *DeShaney* dictates that when the state takes a person into custody and holds him there against his will, the Constitution imposes upon the state a duty to assume some responsibility for that person's safety. *DeShaney* 489 U.S. at 199–200, 109 S.Ct. 998. *Collins* teaches that when a person voluntarily enters an employment relationship with a government employer, the Due Process Clause does not impose a constitutional obligation upon the state to provide certain levels of safety and security in the workplace. *Collins*, 503 U.S. at 128, 130, 112 S.Ct. 1061. Further, *White* states that a governmental duty to protect individuals from harm caused by third parties arises only when the individual and state are in a custodial relationship. *White* 183 F.3d at 1257. Taking these cases together, the court reasons that when a person is in a voluntary relationship with the state, rather than a custodial relationship against his will, that person does not have a special relationship with the state. Due to the lack of a special relationship with the state, the state does not have an obligation to provide a certain level of safety to such a person or to protect such a person against injury by a third party. Accordingly, the question of whether Hobson was in a special relationship with the state turns on whether she was involuntarily in the custody of the state.

In the present case, Hobson voluntarily attended TSU. The Plaintiffs argue that despite Hobson's voluntary enrollment in TSU, a special relationship was created between TSU and Hobson because Hobson was required to live in campus housing. The Plaintiffs compare Hobson's situation to that of a foster child.[6] In *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791 (11th

6. The Plaintiffs cite to *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791 (11th Cir.1987) for the proposition that foster children have a special relationship with the state. The court agrees that *Taylor* established that when the state removes a child from his parents and places that child in foster care, the state assumes a special relationship with that child. The court notes that the Plaintiffs also cite to *Spivey v. Elliott*, 29 F.3d 1522 (11th Cir.1994) as another example of a situation where the Eleventh Circuit found a special relationship between the state and a child in the custody of the state. The Plaintiffs, however, failed to acknowledge that the Eleventh Circuit later withdrew the portion of its opinion relating to whether the complaint alleged a constitutional right, expressly stating that the first opinion would not serve as precedent as to that issue. *See Spivey v. Elliott*, 41 F.3d 1497, 1499 (11th Cir.1995). Therefore, the court will not consider the Plaintiffs' argument related to the

Cir.1987), the Eleventh Circuit held that a child involuntarily placed in a foster home is in a situation so analogous to a prison inmate and/or an involuntarily committed mental patient that a foster child may bring a § 1983 claim for violation of Fourteenth Amendment rights. *Id.* at 797. Thus, a child in a foster home has a special relationship with the state. *Id.* at 798. This court finds, however, that attending college voluntarily is more like voluntarily accepting a government employment position, as was the situation in *Collins,* than being a foster child.

Hobson was not in a situation analogous to that of a foster child, prison inmate, or involuntarily committed mental patient. She was a freshman at a state university. Although she was required to live in an on-campus dormitory, Hobson retained liberty over her life such that she was not in the custody of TSU. This court is unwilling to expand the concept of substantive due process to include a right to protection against injury by third parties to all state university or college students required to live in on-campus dormitories. Grade school children in public schools do not have a special relationship with the state through the school, despite compulsory attendance laws, and thus do not have such a right to protection. *See Wright v. Lovin,* 32 F.3d 538, 540 (11th Cir.1994) (stating that every circuit court faced with the issue has rejected the notion that compulsory attendance laws create the necessary custodial relationship to give rise to a constitutional duty to protect students from third parties). The court finds that given that school children do not have the necessary custodial relationship to give rise to a constitutional right to protection against third parties by the state, it would be illogical to conclude that a college fresh-

man would have such a right based on voluntarily attending a college with an on-campus living requirement.

Further, the Eleventh Circuit reasoned in *White* that submitting to unsafe work conditions or losing one's job does not convert a voluntary employment relationship into a custodial relationship. *White* 183 F.3d at 1257. The court acknowledges that a college or university has a decidedly different function than an employer. Given the reasoning in *White,* however, along with the fact that not even public school children have a custodial relationship with the state, it follows that voluntarily attending and living on the campus of a state university and thus submitting to allegedly unsafe conditions does not turn a voluntary relationship into a custodial relationship. Therefore, the court finds that Hobson did not have the necessary special relationship with the state to give rise to a constitutional duty on the part of the state to protect her from injury by a third party. Consequently, the Plaintiffs have failed to allege a constitutional violation in their Complaint, not because of any deficiency in the allegations, but because the right alleged to have been violated, a constitutional right to protection from injury by a third party, does not exist in this case. The case at hand is undoubtedly tragic, but at the time of her death Hobson had no right under the Fourteenth Amendment to the state's protection against injury from a third party.

Hobson has failed to allege a constitutional violation under the special relationship exception to *DeShaney.* Further, she cannot rely on the special danger doctrine outlined in the overruled *Cornelius* opinion. Therefore, because Hobson was not in a custodial relationship with the state, the Plaintiffs must allege conduct that can

first *Spivey* opinion. Counsel is referred again, most strongly, to the admonition con-

tained in footnote 4 herein.

be characterized as arbitrary or conscious shocking in a constitutional sense to state a claim for a violation of their substantive due process rights. *See White* 183 F.3d at 1258; *see also Waddell v. Hendry County Sheriff's Office,* 329 F.3d 1300, 1305 (11th Cir.2003).

The Plaintiffs have alleged that the Defendants were deliberately indifferent to the safety and well-being of Hobson and the other TSU dormitory residents. The Eleventh Circuit has stated that at the *very least* a substantive due process violation in a non-custodial situation requires a showing of deliberate indifference to an extremely great risk of serious injury to someone in the plaintiff's position. *Waddell* 329 F.3d at 1306. To act with deliberate indifference, a defendant must know of and disregard an extremely great risk to the plaintiff's health or safety. *Id.* The Eleventh Circuit notes in *Waddell* that the legal threshold for substantive due process liability might actually be far higher than deliberate indifference, such as requiring that the government official act maliciously and sadistically for the very purpose of creating a serious injury. *Id.* at 1306 n. 5. As the case at hand is not factually similar to *Waddell,* it is hard to predict the appropriate legal threshold for substantive due process in this case. Therefore, the court will tentatively apply the "low point" standard of deliberate indifference because the Plaintiffs' fail to allege conduct which meets even this standard.

In the present case, the Plaintiffs do not allege conduct which rises to the level of arbitrary or conscious shocking in the constitutional sense. The alleged deliberate indifference by the Defendants does not amount to a knowledge of and disregard for an extremely great risk to the plaintiff's health or safety. The Plaintiffs allege that the Defendants were deliberately indifferent to the following alleged facts:

... control and maintenance of security in and around Brandy Hobson's dormitory was grossly inadequate. Pl.'s Compl. ¶ 22.

... doors which were required to have been locked according to TSU policy were open to trespassers and intruders. *Id.* at ¶ 23.

... locks which were designed to prevent access from the outside and doors which were designed to automatically close were improperly maintained, resulting in the failure of numerous doors in Clements Hall to close and/or lock properly and permitting unrestrained access for intruders and trespassers. *Id.* at ¶ 24.

... individuals improper [sic] accessed Clements Hall. *Id.* at ¶ 25.

... TSU failed to act in light of the potential danger to Brandy Hobson ... *Id.* at ¶ 27.

Keeping in mind that the Supreme Court has cautioned against expanding the concept of substantive due process, and the Eleventh Circuit has expressed concerns about setting the threshold for such complaints too low, the court finds that these allegations do not rise to the level of deliberate indifference to the point of being arbitrary or conscious shocking in the constitutional sense. *See Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) and *Waddell* 329 F.3d at 1304.

The Plaintiffs have failed to allege a constitutional violation of their substantive due process rights under the Fourteenth Amendment. They cannot rely on the special danger doctrine, as it no longer exists in the Eleventh Circuit. Hobson did not have a special relationship with the state giving rise to a duty to protect her from injury at the hands of a third party. Finally, the conduct alleged does not rise to the level of arbitrary or conscious shocking and thus cannot support the allegation of a

violation of the Plaintiffs' and Hobson's substantive due process rights. Therefore, the Plaintiffs have failed to state a constitutional violation as required to defeat the Defendants' assertion of qualified immunity. Accordingly, the Defendants are entitled to qualified immunity and the Plaintiffs' claims are due to be DISMISSED.

Even if the Plaintiffs were able to state a constitutional violation in their Complaint, the Defendants would still be entitled to qualified immunity. Once the Plaintiffs have established a constitutional violation, the next inquiry is whether the right violated was clearly established. "For a constitutional right to be clearly established in a given case, the right's contours must be so clear that every, objectively reasonable official must understand that what the defendant, in the context of the circumstances of the case, is doing clearly violates the right." *Snider v. Jefferson State Comm. College,* 344 F.3d 1325, 1328 (11th Cir.2003). That is, in light of preexisting law, a defendant must have had "fair warning" that his conduct deprived his victim of a constitution right. *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

The law is clearly established that the Due Process Clause of the Fourteenth Amendment provides substantive due process rights to individuals. If, however, the law was not clear that a person in Hobson's situation does *not* have a special relationship with the state, it was most certainly not clear that a person in Hobson's situation *did* have a special relationship with the state giving rise to a duty on the part of the government to protect against injury by a third party. Further, the law is not clear as to what type of conduct on the part of government officials constitutes arbitrary or conscious shocking deliberate indifference to the safety of individuals enrolled at a state university.

The Eleventh Circuit, in *Santamorena v. Georgia Military College,* 147 F.3d 1337 (11th Cir.1998), using the analysis prevalent in the Circuit before the Supreme Court's holding in *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), held that the plaintiff, alleging a violation of her substantive due process rights based on the rape of her daughter while her daughter was living at a state military school, failed to allege the violation of a clearly established right.[7] *See*

---

7. In *Santamorena,* the plaintiff's daughter was one of only two female students enrolled in Georgia Military College's high school program. She was a 13 year old high school freshman at the school. The school required all freshman to stay on campus and to live in the barracks for the first four weeks of school. The school made various, specific representations that the plaintiff's daughter would be provided adequate security. The school failed to perform many of the specific things it had said it would do to ensure the plaintiff's daughter's safety. Despite these assertions of security and subsequent failure to provide such security, the Eleventh Circuit held that there existed no clearly established federal constitutional duty owed by the defendants to the girl to protect her from the incident which occurred. *Santamorena,* 147 F.3d at 1342. The Eleventh Circuit, citing *DeShaney,* also

stated that some preexisting case law may have suggested to the defendants that *no duty* would arise in a voluntary situation, despite representations by the defendants that security would be provided. *Id.* Currently, *DeShaney* is good law, and *White,* decided after *Santamorena,* indicates that the government has a duty to protect only individuals in custody from harm by third parties. *White* 183 F.3d at 1257. Therefore, even though in the present case the Plaintiffs allege that TSU made certain representations that Hobson would be secure in the dormitory, and while this might possibly support a state law claim, the law is not clearly established that making such representations gives rise to a constitutional duty to protect against injury by a third party absent a custodial relationship. As dis-

also *Alexander v. University of North Florida*, 39 F.3d 290 (11th Cir.1994). The court reaches the same conclusion in the present case using the analysis set forth in *Hope*. The Defendants in the present case did not have fair warning that any deliberate indifference to the safety of the students living on the campus of TSU constituted a *constitutional* violation. Further, even if Hobson did have a special relationship with the state, the Defendants did not have fair warning of that relationship or the corresponding duty to protect Hobson from injury at the hands of third parties. Lastly, given that the Plaintiffs allege deliberately indifferent conduct by the Defendants, the Defendants did not have fair warning that the conduct alleged may rise to the level of arbitrary or conscious shocking conduct. The level of conduct necessary to constitute deliberately indifferent conduct in violation of a plaintiff's substantive due process rights is not clear. *See Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1306 n. 5 (11th Cir. 2003). Given the state of the law as to this issue, the Defendants did not have fair warning that their conduct may have violated the law. Therefore, even if the Plaintiffs were able to allege a constitutional violation, the Defendants in the present case would be entitled to qualified immunity. The Plaintiffs' Complaint is due to be DISMISSED with prejudice.

## V. CONCLUSION

For the reasons discussed, the Motion to Dismiss filed by the Defendants is due to be GRANTED.

It is hereby ORDERED as follows:

1. The Motions to Dismiss are GRANTED as all claims against Jack Hawkins, James Andrews, Gerald Dial, Roy Drinkard, John Harrison, Douglas Hawkins, Lamar Higgins, Milton McGregor, Allen Owen, Rod Anderson, and Edward Richardson in their individual capacities and all claims are DISMISSED with prejudice.

2. Judgment will be entered in accordance with this order.

### FINAL JUDGMENT

In accordance with the Memorandum Opinion and Order entered in this case on this day in which all claims against the individual Defendants in their individual capacities were dismissed, and the previous order of the court dismissing all claims against Troy State University, its Board of Trustees, and the individual Defendants in their official capacities,

FINAL JUDGMENT is entered in favor of the Defendants and against the Plaintiffs, and this case is DISMISSED with prejudice. Costs are taxed against the Plaintiffs.

cussed above, the court finds that Hobson and TSU were not in a custodial relationship.